**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Johney B. KEARNEY, Sr.,**
**Defendant-Appellant.**

**No. 81–1574.**

United States Court of Appeals,
Tenth Circuit.

Aug. 9, 1982.

---

Ronald J. Yengich of O'Connell & Yengich, Salt Lake City, Utah, for defendant-appellant.

Francis M. Wikstrom, U. S. Atty., and Samuel Alba, Asst. U. S. Atty., Salt Lake City, Utah, for plaintiff-appellee.

Before McKAY, LOGAN and SEYMOUR, Circuit Judges.

LOGAN, Circuit Judge.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed.R. App.P. 34(a); Tenth Cir.R. 10(e). The cause is therefore ordered submitted without oral argument.

Johney B. Kearney, Sr., appeals from the sentence entered after his plea of guilty to two counts of transporting in interstate commerce cashier's checks valued at more than $5,000, knowing them to have been taken by fraud, in violation of 18 U.S.C. § 2314. On appeal the issues are (1) whether the indictment fairly notified Kearney of the charges against him, (2) whether at the Rule 11 hearing the district court adequately informed Kearney of the offenses to which he agreed to plead guilty, and (3) whether the district court abused its discretion by denying Kearney's motion to withdraw his guilty plea.

A grand jury indicted Kearney for several offenses and trial commenced on all of them. After five days of trial Kearney pleaded guilty to two of the counts in exchange for dismissal of the remaining counts.[1] More than two months later Kearney moved for leave of court to withdraw his guilty plea. Before hearing the motion, the district court sentenced Kearney, but stayed execution. Then after a hearing the court denied Kearney's motion.

I

Kearney alleges the indictment did not fairly notify him of the charges because Counts 13 and 14, to which he pleaded guilty, neither specified what conduct prohibited by 18 U.S.C. § 2314 Kearney was charged with doing, nor set out the requisite elements of an offense under the statute. The short answer to Kearney's allegation is that in setting forth Counts 13 and 14, the indictment specifically incorporates by reference all allegations of Counts 1 through 12, as is permitted by Fed.R. Crim.P. 7(c). Reading Counts 13 and 14 with the incorporated allegations, we find the indictment fairly informed the defendant of the offenses with which he was charged and the elements of those offenses: willfully and knowingly transporting or causing to be transported in interstate commerce cashier's checks with a value of more than $5,000, knowing they were obtained by fraud.

II

Kearney also contends his guilty plea was involuntary because he was not adequately informed at the Fed.R.Crim.P. 11 hearing of the offenses to which he then pleaded guilty. After reviewing the record, we find no merit to this contention. At the Rule 11 hearing, among other things the district court read Kearney Counts 13 and 14 from the indictment. The court ascertained that Kearney's lawyer had represented him from shortly after the time of indictment through the plea of guilty and had fully counseled Kearney concerning the plea. In addition, both Kearney and his counsel signed a document entitled "Statement by Defendant in Advance of Plea of Guilty" stating that counsel had fully advised Kearney of his rights. Numbered

---

1. Two codefendants tried with Kearney also changed their pleas after five days of trial.

paragraph one of the document states, "The nature of the charges against me have been explained. I have had an opportunity to discuss the nature of the charges with my attorney, and I understand the charges and the elements which the government is required to prove." Also, we note that before pleading guilty Kearney sat through five days of the government's evidence on these and related counts. In finding that Kearney had been informed of the nature of the charges against him, the presiding judge could reasonably consider Kearney's opportunity to hear the government's case. Under these circumstances, Kearney at the Rule 11 hearing had adequate notice of the nature of the charges to which he pleaded guilty.

### III

■ Kearney contends that when the district court denied his motion for leave to withdraw his guilty plea, the court abused its discretion because, Kearney claims, at the time of the plea he "was not acting in complete control of his faculties and was under the influence of drugs he was taking for his heart condition." Kearney does not identify the medication, give information concerning its effects, or offer any more specific basis for his motion. Nor has Kearney designated as a part of the appellate record a transcript of the hearing on his motion.

In exercising its discretion, a trial court will permit a criminal defendant to with-

draw a plea of guilty prior to sentencing "if for any reason the granting of the privilege seems fair and just." *Kercheval v. United States*, 274 U.S. 220, 224, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). For example, the trial court may set aside a guilty plea made through ignorance, fear, or inadvertence. *See id.* Although a defendant has no absolute right to withdraw a guilty plea, the trial court should consider the motion carefully and liberally. *United States v. Hancock*, 607 F.2d 337, 337 (10th Cir. 1979). However, the court also may consider whether the government will be prejudiced if the plea is withdrawn. *United States v. Bryant*, 640 F.2d 170, 172 (8th Cir. 1981) (because of some intimidation, witnesses may be reluctant to testify again); *United States v. Simmons*, 497 F.2d 177, 178–79 (5th Cir.) (government's witnesses were transients and would be difficult to locate again), *cert. denied*, 419 U.S. 1048, 95 S.Ct. 623, 42 L.Ed.2d 643 (1974); *United States v. Vasquez-Velasco*, 471 F.2d 294, 294 (9th Cir.) (in interim government's chief witness had died), *cert. denied*, 411 U.S. 970, 93 S.Ct. 2163, 36 L.Ed.2d 692 (1973).

At the Rule 11 hearing the district court carefully asked Kearney and his counsel about Kearney's state of mind and specifically inquired about the effects of Kearney's medication. Based upon the responses of Kearney and his counsel, the district court determined Kearney was fully aware of what he was doing.[2]

---

2. In pertinent part, the transcript of the Rule 11 hearing states:

"THE COURT: At this time, do you have any mental reservations about entering the plea, Mr. Kearney, considering all of the circumstances?

A. No.

THE COURT: Now, I understand you have been ill, and apparently have been quite ill over the weekend. Has this illness, has it affected your ability to comprehend in any way?

A. I don't think so.

THE COURT: Do you feel absolutely confident that you are understanding what we are talking about, the consequences of what you are doing and that sort of thing?

A. I believe so.

THE COURT: Mr. Yengich [ (Kearney's counsel) ], based on your discussions with Mr. Kearney this morning, are you similarly confident?

A. MR. YENGICH: I believe he understands and he is entering an understanding, knowing and intelligent plea, Your Honor.

THE COURT: Mr. Kearney, are you under the influence of medication now?

A. Well, I am always under the influence of medication. I take it four times a day.

THE COURT: What is the effect of the medication, generally? Is it a tranquilizer?

A. No. One of them is a pain killer. One of them is to regulate my heartbeat, and the other one, which is supposed to be in my blood stream constantly, is supposedly to hopefully someday, to dissolve the blockage.

Permitting Kearney to withdraw his plea would prejudice the government because it had invested five days of effort in the trial of Kearney and his codefendants before they agreed to a plea bargain. To begin trial again would mean calling another panel of jurors and requiring the government to gather its witnesses again. By his actions in aborting the first trial, Kearney would have the advantage to which he is not entitled of knowing the government's strategy and the government's witnesses' testimony.

In light of the district court's specific questions at the Rule 11 hearing concerning Kearney's medication, the transcript's support for the court's determinations that Kearney was competent and freely and voluntarily pleaded guilty, the prejudice to the government if it had to again try this case, and the inadequate showing Kearney has made on appeal as to the effect the medication might have had on his competency, we conclude the district court did not abuse its discretion by denying Kearney leave to withdraw his plea.

AFFIRMED.

It is a new experimental drug recently developed at UCLA and I am on that program.

THE COURT: But you can read things and comprehend what you are reading?

THE COURT: You can articulate what you are thinking or it sounds like to me. So, you feel—

MR. YENGICH: And he has throughout the course of the trial proceedings and this morning as we have discussed these matters.

THE COURT: Now, Mr. Kearney, I am not going to ask [the assistant United States attorney] to go into any discussion. I have heard a week of trial. But you should understand that when I read you Counts 13 and 14, to which I understand you are going to enter a plea of guilty, that if you do enter a plea of guilty, you are fully and totally incriminating yourself on the criminal charges contained therein. Do you know that?

.    .    .    .    .

THE COURT: ... What is your plea to Counts 13 and 14 that I just read you, guilty or not guilty?

A. Guilty.

THE COURT: Based upon your answers to my questions, your having signed the Statement in Advance of Plea of Guilty, I find that your plea of guilty has been freely and voluntarily made, that you are competent to enter this plea and the same is entered and accepted."

R. II, 32-35.