**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Laurence KEISWETTER,
Defendant–Appellant.**

No. 87–2347.

United States Court of Appeals,
Tenth Circuit.

Nov. 4, 1988.

Order Granting Rehearing En Banc
Dec. 7, 1988.

---

Vicki Mandell–King, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the briefs), Denver, Colo., for defendant-appellant.

Kim Martin, Asst. U.S. Atty. (Benjamin L. Burgess, Jr., U.S. Atty., and Robin Fowler, Asst. U.S.Atty., with her on the brief), Wichita, Kan., for plaintiff-appellee.

Before MOORE and BALDOCK, Circuit Judges, and PARKER, District Judge.[*]

PARKER, District Judge.

Laurence Keiswetter appeals from a judgment entered by the district court after it refused to allow Mr. Keiswetter to withdraw a guilty plea entered pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Mr. Keiswetter raises several issues on appeal. The only issue that warrants detailed consideration is Mr. Keiswetter's claim that the trial court should have allowed him to withdraw his guilty plea because his *Alford* plea was not voluntary. The record indicates that the district court was satisfied that Mr. Keiswetter voluntarily offered his plea of guilty. The record does not, however, clearly demonstrate the factual basis for the district court's determination that Mr. Keiswetter's guilty plea was voluntarily made. For this reason, we remand for further proceedings consistent with this Opinion.

Mr. Keiswetter was originally charged with the felony of knowingly converting property valued in excess of one hundred dollars, in violation of 18 U.S.C. § 658. The property that Mr. Keiswetter allegedly converted was cattle that had been mortgaged to the Production Credit Association of Stockton, Kansas (PCA). At the time the charge was filed, Mr. Keiswetter and the PCA were involved in civil litigation relating to the same cattle.

Mr. Keiswetter entered into an agreement with the government in which he agreed to plead guilty to the misdemeanor of conversion in exchange for the dismissal of the felony charge.[1] At the hearing on the negotiated plea, Mr. Keiswetter expressed ambivalence about his desire to plead guilty. His ambivalence apparently arose out of his belief in his innocence because of his professed lack of intent to defraud, and his doubts about PCA's legal status and the validity of the mortgage PCA required him to sign.

The trial court explicitly recognized Mr. Keiswetter's ambivalence, and painstakingly explained to Mr. Keiswetter the consequences of his decision to plead guilty. The trial judge also encouraged Mr. Keiswetter to exercise his right to trial by jury on the felony charge, if Mr. Keiswetter was not convinced that he wanted to enter into the guilty plea. Moreover, the trial judge explained that he would not sentence more severely if Mr. Keiswetter chose to exercise his right to jury trial rather than pleading guilty. R.Vol. II, 18. Finally, although Mr. Keiswetter commented concerning his belief that his civil litigation and the criminal case were interrelated, the trial judge repeatedly emphasized the separate nature of the civil and criminal proceedings. R.Vol. II, 20; R.Vol. II, 25; R.Vol. II, 27.

---

[*] Honorable James A. Parker, District Judge, United States District Court for the District of New Mexico, sitting by designation.

1. The elements of the misdemeanor were identical to the charged felony, except that the value of the converted cattle was reduced to less than one hundred dollars.

The lengthy discussion of defendant's options and reasons for and against entering into an *Alford* plea was punctuated by a recess during which the trial judge communicated with a jury in an unrelated case. After the hearing on the plea resumed, Mr. Keiswetter again indicated his intention to plead guilty and the trial judge accepted his plea. Eleven days later Mr. Keiswetter moved to withdraw his guilty plea, because his attempt to settle the civil litigation had been unsuccessful. R.Vol. I, # 23. At the sentencing hearing, the trial court denied the motion to withdraw guilty plea and sentenced Mr. Keiswetter to custody for one year, but suspended execution of the sentence and placed him on probation for five years.

Mr. Keiswetter argues on appeal that the trial court erred in denying his motion to withdraw his guilty plea because he did not voluntarily offer the plea. If a motion to withdraw guilty plea is made before sentence is imposed, it may be granted upon a showing by the defendant of any fair and just reason. Fed.R.Crim.P. 32(d). Nevertheless, a district court's denial of a motion to withdraw guilty plea may only be overturned if it constituted an abuse of discretion. *United States v. Kearney,* 684 F.2d 709 (10th Cir.1982).

■ Assertion of a defendant's subjective belief in his own innocence does not mandate allowing him to withdraw his plea of guilty. *See United States v. Buckley,* 847 F.2d 991, 998 n. 4 (1st Cir.1988) ("By definition, defendants who make *Alford* pleas do not deny their legal innocence. This does not mean they can withdraw these pleas willy-nilly."). In *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the United States Supreme Court recognized that an express admission of guilt "is not a constitutional requisite to the imposition of criminal penalty." *Id.* at 37, 91 S.Ct. at 167. In *Alford,* the criminal defendant had been charged with first-degree murder but elected to plead guilty to second-degree murder despite his asserted innocence, because he

wished to avoid the risk of a death penalty.[2] The Supreme Court upheld the guilty plea under those circumstances for two reasons: (1) because the defendant had intelligently concluded that his interests required the entry of a guilty plea, and (2) because there was strong evidence in the record of the defendant's actual guilt. *Id.*

The first concern addressed by the *Alford* Court involves an examination of the defendant's state of mind, and can be the basis for invalidating a guilty plea when the evidence is not clear that the defendant voluntarily and knowingly plead guilty. In *McCarthy v. United States,* 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969), the Supreme Court invalidated a guilty plea because of the trial judge's failure to ask the defendant whether he understood the nature of the charge against him and whether he was aware of the consequences of the plea. The Court emphasized that if a guilty plea was not truly voluntary, entry of the plea would violate due process. *Id.* at 466, 89 S.Ct. at 1170.

■ In the present case, Mr. Keiswetter's plea originated with a document entitled "Petition to Enter Plea of Guilty and Order Entering Plea," that was signed and verified in open court. R.Vol. II, 3. In that document, Mr. Keiswetter recited that he had read the Indictment and had discussed it with his lawyer. He also stated: "I fully understand every charge made against me." R.Vol. I, # 22, ¶ 3. The Indictment Mr. Keiswetter professed to have read stated:

The Grand Jury charges:

### COUNT I

On or about March 22, 1984, in the District of Kansas,

### LAURENCE J. KEISWETTER

did, with intent to defraud, knowingly and intentionally conceal, dispose of or convert to his own use property of a value greater than $100.00, to-wit: ap-

---

**2.** Under North Carolina law in effect at that time, first degree murder was punishable by death unless the jury recommended life imprisonment.

proximately 35 cattle, when said cattle were mortgaged or pledged to the Production Credit Association of Stockton, which is a production credit association organized under Section 1131(d) of Title 12, United States Code, in violation of 18 U.S.C. 658.

R.Vol. I, # 1. That Indictment charges the element of intent in clear and explicit language. Mr. Keiswetter's understanding of the charge is further documented in paragraphs four, five and six of the "Petition to Enter Plea of Guilty," which recite that he had told his lawyer all of the facts and circumstances concerning the charge, that he committed the acts charged in the Indictment, and that his lawyer had advised him of the nature of each charge and on all possible defenses he might have had in the case. R.Vol. I, # 22, ¶¶ 4, 5, 6.

Moreover, Mr. Keiswetter had been advised by his counsel that the tactical benefit he would obtain by pleading guilty to a misdemeanor outweighed the risk that a jury might convict him of a felony. R.Vol. II, 17. Additionally, despite the trial judge's admonitions, Mr. Keiswetter apparently believed that by entering into the *Alford* plea, he might gain some advantage in his civil litigation. The record of proceedings in the trial court contains ample evidence that Mr. Keiswetter intelligently concluded that a guilty plea to the misdemeanor charge was in his best interest. Therefore, the first aspect of the *Alford* inquiry (the *McCarthy* prong) was satisfied in this case.

■ The second factor considered in *Alford* focusses not on the defendant's state of mind, but on the trial judge's assessment of the factual basis for the guilty plea. In *United States v. Allen*, 804 F.2d 244, 248 (3rd Cir.1986), *cert. denied*, 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987), the Third Circuit Court of Appeals emphasized that the sufficiency of the factual basis for a guilty plea is to be examined from the perspective of the trial judge, in contrast with *McCarthy's* emphasis on the defendant's understanding or state of mind. *Id.* at 247–48. The situation in *Allen* was much like that in the present case.[3] The Third Circuit reviewed the trial judge's determination that a factual basis for the guilty plea existed under the standards established by Rule 11(f) of the Federal Rules of Criminal Procedure. Rule 11(f) requires a trial court to satisfy itself that there is a factual basis for a guilty plea before entering judgment upon such a plea.[4] The purpose of this requirement is to ensure the accuracy of the plea through some evidence that a defendant actually committed the offense. *Gregory v. Solem*, 774 F.2d 309, 312 (8th Cir.1985), *cert. denied*, 475 U.S. 1088, 106 S.Ct. 1475, 89 L.Ed.2d 730 (1986).

As in *Allen*, the troublesome aspect of the present case occurs in connection with the second factor considered in *Alford*, because of the paucity in the record below of information about the factual basis for Mr. Keiswetter's guilty plea. Despite Mr. Keiswetter's avowed intent to plead guilty, it was clear from the outset that the intent element of the crime of conversion was the actual focus of his claim of innocence.[5] The trial judge stated that "I will accept the plea as made and as there being a sound factual basis for it, certainly from the government viewpoint, and the question of intent always being a question of fact for determination and the facts that he

---

3. Although the defendant in *Allen* did not explicitly state that his plea was an *Alford* plea, he denied that he had committed one of the elements of the crime charged. It is difficult to see how appellate review of the plea would have differed if the plea had been labelled an *Alford* plea.

4. Fed.R.Crim.P. 11(f) provides: "Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea."

5. Among his various contentions, Mr. Keiswetter claimed that he sold the mortgaged cattle on his lawyer's advice that the sale was lawful. Mr. Keiswetter did not emphasize his innocence of the intent element of the crime of conversion in his colloquy with the trial judge at the hearing on the plea. Nevertheless, the trial judge focussed on this issue early in the proceedings, R.Vol. II, 8–9, and Mr. Keiswetter's attorney also identified the intent element of the crime as the primary issue to be decided by the jury. R.Vol. II, 17.

says by his plea that he participated in that part of it, I will accept his plea." R.Vol. II, 30. Nevertheless, the record fails to reflect clearly the evidence on which the trial judge relied in reaching his conclusion that there was a factual basis to believe that Mr. Keiswetter possessed the requisite intent for the crime of conversion.

This is not to say that the trial court was required to hold an evidentiary hearing to ascertain the factual basis for Mr. Keiswetter's guilty plea. Rule 11(f) permits the trial judge to find the factual basis for the plea *"in anything"* that appears in the record. *United States v. Fountain,* 777 F.2d 351, 356 (7th Cir.1985), *cert. denied,* 475 U.S. 1029, 106 S.Ct. 1232, 89 L.Ed.2d 341 (1986) (emphasis added). "An inquiry might be made of the defendant, of the attorneys for the government and the defense, of the presentence report when one is available, or by whatever means is appropriate in a specific case." Notes of Advisory Committee on Rules, 1974 Amendment to Rule 11. Although Rule 11(f) requires a factual basis for the entry of a guilty plea, "it does not require the judge to replicate the trial that the prosecutor and defendant entered a plea agreement to avoid." *United States v. Lumpkins,* 845 F.2d 1444, 1451 (7th Cir.1988).

In the context of an *Alford* plea in *United States v. White,* 724 F.2d 714 (8th Cir. 1984) (per curiam), the court of appeals affirmed a trial judge's finding of a sufficient factual basis to accept a plea where the only evidence of the disputed element (interstate transportation) came from an unreliable witness. The court of appeals pointed out that the assertion that a prosecution witness was lying was implicit in every case in which a defendant denies his guilt despite testimony by a prosecution witness to the contrary. 724 F.2d at 716. Although the impeachability of the prose-

cution witness might enter into a defendnat's decision to go to trial rather than to plead guilty, it did not undermine the factual basis for the guilty plea. *Id.*

The requirement that the district court ascertain that the guilty plea has a factual basis before entering judgment on the plea does not entitle the appellate court to substitute its judgment for that of the district court. Rather, Rule 11(f) explicitly requires a factual basis sufficient to satisfy the district court. Rule 11(f) establishes, therefore, a subjective, rather than objective standard. *United States v. Antone,* 753 F.2d 1301, 1305 (5th Cir.), *cert. denied,* 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). *See also* Note, *The Alford Plea: A Necessary but Unpredictable Tool for the Criminal Defendant,* 72 Iowa L. Rev. 1063, 1069 (May, 1987).

Although Rule 11(f) establishes a subjective standard, the trial judge's exercise of his discretion can only be judged by reference to the record. "It is therefore incumbent upon the judge to produce a record on the basis of which we can determine that his discretion was not abused." *United States v. Dayton,* 604 F.2d 931, 938 (5th Cir.1979), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). It is on the basis of that record that the reviewing court can determine whether the "strong evidence" found in *Alford* is present.[6]

In the present case, the record does not disclose the precise factual basis for the district judge's belief that there was evidence of all the elements of the crime of conversion. Although the prosecutor provided a brief statement of what the government's evidence would be at trial, the description of the government's case did not include any evidence tending to prove that Mr. Keiswetter possessed the requisite intent for the offense of conversion.[7]

---

**6.** Contrary to the assertion in the dissent, it is not clear that *Alford* mandated a finding of "strong evidence" in every case. Rather, because the record in that case revealed "strong evidence" of the defendant's guilt, the plea of guilty was not constitutionally infirm. Neither *Alford,* nor any case subsequent to *Alford,* suggests that "strong evidence" is the only constitutionally adequate standard for the acceptance of

an *Alford* plea. The outer limits of the factual basis sufficient for an *Alford* plea have yet to be defined.

**7.** The prosecutor stated as follows:
The facts of the case, the government evidence at trial will show that Mr. Keiswetter signed on July 22nd of 1983, a security agreement with the Production Credit Association

As discussed above, however, the district judge need not have relied only on the prosecutor's description of the government's case for his determination that there was a sufficient factual basis for Mr. Keiswetter's guilty plea. A presentence report was prepared in this case, although the content of that report is not part of the record on appeal. The presentence report may have contained sufficient information on the element of Mr. Keiswetter's intent to have assured the district judge that the guilty plea was proper. *See United States v. Gomez–Gomez*, 822 F.2d 1008, 1011 (11th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 755, 98 L.Ed.2d 767 (1988).

Furthermore, a significant factor in this case is that prior to appearing before the district judge for his hearing on possible change of plea, Mr. Keiswetter signed and swore to the document entitled "Petition to Enter Plea of Guilty and Order Entering Plea." In that document, the nature of the offense with which Mr. Keiswetter was charged was fully detailed and the following statement appeared:

> I know that the Court must be satisfied that there is a factual basis for a plea of "GUILTY" before my plea can be accepted. I represent to the Court that I did the following acts in connection with the charges made against me in *Count I OF THE SUPERSEDING INDICT-MENT: THAT ON OR ABOUT MARCH 22, 1984, IN THE DISTRICT OF KANSAS, I DID, WITH THE INTENT TO DEFRAUD, KNOWINGLY AND INTENTIONALLY CONCEAL, DISPOSE OF OR CONVERT TO MY OWN USE, PROPERTY OF A VALUE LESS THAN $100.00, WHEN SAID PROPERTY WAS MORTGAGED OR PLEDGED AS COL-LATERAL, IN VIOLATION OF 18 U.S.C. SECTION 658.*

(emphasis in original). While this statement, standing alone, may not be sufficient to constitute "strong evidence" of Mr. Keiswetter's guilt under *Alford*, it seems appropriate for the trial judge to take such a statement into consideration, particularly if there was other evidence in the record that supported the conclusion that Mr. Keiswetter had the necessary state of mind for the crime of conversion.[8]

On the record as it presently stands, however, we do not know whether Mr. Keiswetter's statement was the sole basis for the district judge's satisfaction that a factual basis existed for the guilty plea, or whether the district judge actually relied on this document in accepting Mr. Keiswetter's *Alford* plea and in entering judgment. Moreover, it is unclear whether the trial judge relied on information contained in the presentence report or whether, in addition to the presentence report, there were other sources of information before the trial judge which provided a factual basis for the charge.

In *United States v. Allen, supra,* the Third Circuit faced a similar situation. In that case, there was confusion in the record about the basis for the district court's acceptance of the guilty plea. Accordingly, the Third Circuit remanded for reconsideration of the existing record. 804 F.2d at 248.

In light of the foregoing, we must partially remand this case for clarification of the district judge's reasons for finding that a factual basis existed for the charge to which Mr. Keiswetter plead guilty. The district judge should enter written findings and certify his findings to this court as a

---

that's described in the indictment and that on that security agreement, thirty-five cattle were listed as collateral and they were pledged to the Production Credit Association. On or about March 22nd of 1984, the government evidence would show that these cattle were sold, I believe at the Norton Livestock Auction. I may not have the words right or the company's title right, but they were sold at an auction in Norton, I believe on March 22nd of 1984, and the proceeds were traced to Mr. Keiswetter's account in Colorado. I believe it was to the Bank in Platteville, Colorado.

That's what our evidence would show, Your Honor, and I believe that would meet each of the elements, and I have discussed each of the elements in the offenses [sic].
R.Vol. II, 9–10.

**8.** A factual resume like the sworn statement in this case was, when coupled with other evidence, found to be sufficient to support a district judge's finding of a factual basis for a guilty plea in *United States v. Guichard*, 779 F.2d 1139, 1146 (5th Cir.), *cert. denied*, 475 U.S. 1127, 106 S.Ct. 1654, 90 L.Ed.2d 197 (1986).

supplement to the record on appeal. The supplement to the record on appeal shall include the record of any proceedings held pursuant to this Opinion.

All of Mr. Keiswetter's other arguments in support of his appeal have been considered and have been found to be without merit.

REMANDED.

JOHN P. MOORE, Circuit Judge, dissenting.

I must respectfully dissent from that part of the court's opinion which holds that *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), does not require a finding of "strong evidence" to substantiate the guilty plea of a defendant who subsequently protests his innocence. I further disagree with remanding this case for further inquiry. It is my judgment the attempted *Alford* plea was invalid, and allowing the trial court the opportunity to revitalize it is a post hoc disposition that is unparalleled in our jurisprudence. The plea must be vacated, and the case remanded for reinstatement of the original plea of not guilty.

I reach this conclusion because I believe *Alford* teaches there is only one way a negotiated guilty plea can be upheld in the face of a defendant's protestation of innocence. To sustain an *Alford* plea, a reviewing court must find evidence presented at the taking of the plea which strongly suggests the guilt of the accused. Without such strong evidence, refusal to permit the withdrawal of the plea would result in the anachronism of forcing a conviction to stand *without evidence of guilt*.[1]

*Alford* recognizes the truism that occasionally defendants perceive a personal advantage in pleading to an offense even though they believe themselves innocent of the actual charge to which the plea applies. In those circumstances, when there is evidence of a factual basis for the charge, and when that evidence is before the court when the plea is accepted, *Alford* permits the plea to stand even though the defendant later claims innocence and challenges the plea.[2] In those cases, the plea will be enforced even though the question of innocence may remain factually unresolved. But, I find nothing in *Alford* which suggests the plea should stand if the government's evidence contains a vital default.

Such is the case here. The defendant persisted, as he persists today, that he had authority to sell the cattle which were the subject of the charge. What makes this case remarkable is that the government's statement of the nature of its proof given to the trial court at the time of sentencing was devoid of *any* suggestion that Mr. Keiswetter did not have that authority. Nothing in the government's representation of its evidence suggests that it could controvert the contention upon which the defendant's subsequent protestation of innocence is based. For that matter, I find nothing in the record from which it could be fairly presumed that the issue of the defendant's specific intent to defraud was *disputed* by the government. This defect is not merely technical. It goes to the very heart of the defendant's claim that the plea should be set aside.

I also disagree with the majority that this case can be resolved by subjecting it to a simple Fed.R.Crim.P. 11(f) analysis. This case is not akin to *United States v. Allen*, 804 F.2d 244 (3rd Cir.1986), *cert. denied,*

---

1. Contrary to the suggestion of the majority, I cannot attach significance to the statement contained in the so-called "Petition to Enter Plea of Guilty" signed by the defendant. Given the context of the plea, the defendant's signature on the document is no more significant than his willingness to plead guilty. It is no more logical to presume that the statements contained in the petition could provide evidence of guilt agreed to by the defendant than it would be to presume that the plea itself is an admission of the validity of the charge.

2. The test is whether the record overcomes the defendant's protestation of innocence. In *Alford,* contrasting the defendant's plea with a *nolo contendere* plea, the Court stated:

    Nor can we perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, *as in the instant case,* a defendant intelligently concludes that his interests require entry of a guilty plea *and the record before the judge contains strong evidence of actual guilt.* 400 U.S. at 37, 91 S.Ct. at 167. (Emphasis added.)

480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 697 (1987), relied upon to reach that conclusion. *Allen* does not involve an *Alford* plea; therefore, from the outset, the case arises in a different context. The *Allen* court was not faced with a defendant's protestation of innocence when it decided whether his plea should be vacated. Contrarily, Mr. Keiswetter's claim of innocence is of great importance because we are called upon to determine whether that protestation is invalidated by evidence of his guilt. *Alford*, 400 U.S. at 38, 91 S.Ct. at 167.

An even more critical distinction between the two cases, however, lies in the fact that during the taking of the plea in *Allen*, there was evidence presented to the court to support the charge. In our case there was no such evidence, and, therefore, there is no basis for assuming that the default in the government's statement of its evidence can be overcome on remand.[3] Instead, the majority surmises the completeness of the government's case, and rather than remanding to put the issue of guilt to trial, the court lets the prosecution have another crack at posturing a proper plea.

The outcome here must be governed by *McCarthy v. United States*, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969). In that case, the Court determined a plea of guilty was improvidently accepted by the trial court without complying with Rule 11. The Court held that the violation required that the guilty plea be set aside and the defendant allowed to replead. I can find no distinction between *McCarthy* and the case before us.

While *McCarthy* involved a trial court's failure to inquire whether the defendant understood the nature of the charge and the consequences of his plea, it still is in parallel with the instant case. In both cases, there is a default in the evidence necessary to sustain the plea. In *McCarthy*, the default was evidence of the defendant's understanding. In our case, the default is in the evidence of the defendant's fraudulent intent. If the default in *McCarthy*, a simple Rule 11 case, was sufficient to require the avoidance of the plea, the same result must adhere to this case. We have always followed this course. *See United State v. Theron*, 849 F.2d 477 (10th Cir.1988); *United States v. Blackner*, 721 F.2d 703 (10th Cir.1983); *United States v. Thomas*, 468 F.2d 422 (10th Cir.1972), *cert. denied*, 410 U.S. 935, 93 S.Ct. 1389, 35 L.Ed.2d 599 (1973); *United States v. Townsend*, 453 F.2d 1334 (10th Cir.1972).

I see no reason why that remedy should not be followed here.[4]

### ORDER

Appellant's suggestion for rehearing *en banc* is granted. Within 20 days of the date of this order, the parties may file simultaneous briefs, not to exceed 20 pages. Argument, limited to 15 minutes per side, will be heard Thursday, January 19, 1989 at 2:30 P. M.

Judges Logan and Baldock voted to deny *en banc* consideration.

---

3. Viewed in its best light, the government's statement of its evidence at best made problematic whether it was capable of proving the defendant acted with fraudulent intent. As that was the very circumstance upon which the defendant asserted his innocence, there is nothing in the defendant's statements which cure this fundamental defect.

4. In applying *Allen*, the majority fails to recognize the uniqueness of the case. Contrary to this case, a remand for clarification was in order because there was evidence in the record, had it been relied upon by the trial court, that supported the conclusion that there was a factual basis for the plea. Under this circumstance, the remand was not to revitalize the plea, but to allow the trial court to eliminate the ambiguity. There is no ambiguity to clarify here. The trial court was presented with no evidence to overcome the defendant's protestation of innocence; therefore, the plea must be vacated. Indeed, it was upon this rationale that the court in *Allen* found *McCarthy* inapposite.