FILED
United States Court of Appeals
Tenth Circuit

December 31, 2013

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JUAN MANUEL GLARIA-RAMIREZ,

Defendant - Appellant.

No. 13-8078
(D. Wyoming)
(D.C. Nos. 1:12-CV-00247-SWS and
2:11-CR-00236-SWS-4)

---

**ORDER DENYING
CERTIFICATE OF APPEALABILITY**[*]

---

Before **TYMKOVICH**, **ANDERSON**, and **BACHARACH**, Circuit Judges.

---

Defendant and petitioner, Juan Manuel Glaria-Ramirez, proceeding *pro se*, seeks a certificate of appealability ("COA") to enable him to appeal the district court's order denying his motion to vacate his sentence, pursuant to 28 U.S.C. § 2255. After concluding that Mr. Glaria-Ramirez has failed to meet the requirements for issuance of a COA, we deny him a COA and dismiss this matter.

---

[*]This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Starting in November of 2010, law enforcement authorities were investigating an ongoing criminal drug conspiracy involving the possession, distribution and sale of methamphetamine. The methamphetamine was being imported from Utah and Idaho to Sweetwater County, Wyoming. Through the investigation, law enforcement learned that the following individuals were involved in the conspiracy: Felix G. Maldonado, of Burley, Idaho; Sheila Ann Russell, of Burley, Idaho; Christopher Scott Ayers, of Eden, Wyoming, and Rupert, Idaho; Stephen Edward Painovich, of Eden, Wyoming; and Mr. Glaria-Ramirez, of Salt Lake City, Utah.

Mr. Maldonado and Ms. Russell testified that they purchased drugs from "Mexicans" in Salt Lake City, Utah, through a Mexican drug trafficking organization run by "The Old Man." The drugs would then be transported primarily to Wyoming for distribution. Mr. Maldonado described Mr. Glaria-Ramirez's role as being the "muscle" for "The Old Man." Mr. Maldonado and Ms. Russell further testified that Mr. Glaria-Ramirez had either supplied them with methamphetamine or had been present during their drug transactions on numerous occasions dating as far back as January of 2010.

More specifically, according to their testimony, Mr. Maldonado and Ms. Russell met Mr. Glaria-Ramirez on July 23, 2011, in Salt Lake City to obtain four ounces of methamphetamine. Mr. Glaria-Ramirez then followed them from

Utah to Wyoming to guard the methamphetamine and to collect the money from its sale. After their arrival in Wyoming, Mr. Glaria-Ramirez apparently became frustrated after only a small amount of methamphetamine was sold, and subsequently drove back to Salt Lake City with the remaining methamphetamine on July 24, 2011.

On the following day, July 25, 2011, Mr. Maldonado contacted "The Old Man" and asked him to send Mr. Glaria-Ramirez back to Wyoming with the methamphetamine, because Mr. Maldonado had made arrangements to sell two ounces of methamphetamine to "Jay" (who was an undercover officer). Mr. Glaria-Ramirez accordingly returned to Wyoming on July 25, with the methamphetamine, and met Mr. Maldonado in Farson, Wyoming. Mr. Glaria-Ramirez then drove with Mr. Maldonado from Farson to Reliance, Wyoming, to meet Jay. According to Mr. Maldonado, during the drive, Mr. Glaria-Ramirez told Mr. Maldonado that, after he collected the money from the sale of the methamphetamine, he was going to drive to California to buy more methamphetamine for "The Old Man."

Mr. Glaria-Ramirez and Mr. Maldonado met Jay at 8:30 p.m. and delivered two ounces of methamphetamine for $4,000. Mr. Maldonado and Mr. Glaria-Ramirez were then arrested.

On August 16, 2011, Mr. Glaria-Ramirez (along with four others) was charged by criminal complaint with conspiracy to possess with intent to distribute

and to distribute methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A), and possession with intent to distribute methamphetamine and aiding and abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B) and 18 U.S.C. § 2. On January 31, 2012, Mr. Glaria-Ramirez entered into a plea agreement with the government. At his change of plea hearing, however, Mr. Glaria-Ramirez expressed a desire to plead not guilty and proceed to trial. Accordingly, on February 14, 2012, Mr. Glaria-Ramirez's jury trial commenced.

On the second day of his jury trial, after hearing the testimony of several witnesses, including his co-conspirators, Mr. Glaria-Ramirez changed course, entering a guilty plea to both counts charged in the indictment. Prior to accepting his guilty plea, the court asked Mr. Glaria-Ramirez if it was his desire to change his plea in this matter. Mr. Glaria-Ramirez answered affirmatively. The court then asked Mr. Glaria-Ramirez if he understood the nature of the charges against him and the potential penalties, the rights he would be waiving by entering a guilty plea, that he would be required to provide a factual basis for his guilty plea, and that his guilty plea must be entered freely and voluntarily. Mr. Glaria-Ramirez again answered affirmatively. Mr. Glaria-Ramirez also confirmed that he had discussed his change of plea with his counsel and that he was satisfied with his counsel's representation.

After accepting Mr. Glaria-Ramirez's guilty plea, the district court continued to establish a factual basis for his plea. During his dialog with the court, Mr. Glaria-Ramirez admitted that he supplied in excess of fifty grams of methamphetamine to Felix Maldonado on July 23, 2011, while they were in Utah. He then affirmatively stated that he knew Mr. Maldonado was going to sell the methamphetamine in Wyoming. Additionally, Mr. Glaria-Ramirez admitted to using his own vehicle to transport Mr. Maldonado and the methamphetamine from Utah to the location of the sale in Wyoming on July 25, 2011. The district court then accepted his guilty plea and concluded that Mr. Glaria-Ramirez provided a sufficient factual basis to establish each and every essential element of the crime to which he pled.

On April 27, 2012, Mr. Glaria-Ramirez appeared for sentencing. Mr. Glaria-Ramirez did not make any objections to the pre-sentence report ("PSR") prepared by the United States Probation Office in preparation for sentencing. The PSR included a detailed description of the evidence uncovered during the course of the investigation. The PSR included the 54.3 grams of methamphetamine sold to Jay, the undercover agent, by Mr. Glaria-Ramirez and Mr. Maldonado on July 25, 2011. The PSR further described an additional 411 grams of a mixture or substance containing a detectable amount of methamphetamine that investigators linked to Mr. Glaria-Ramirez's conduct prior to his arrest on July 25, 2011.

The district court concluded that Mr. Glaria-Ramirez's total offense level was thirty which, with a criminal history category of III, yielded an advisory sentence under the United States Sentencing Commission, Guidelines Manual, of 121 to 151 months' imprisonment. The district court found that, while Mr. Glaria-Ramirez was not a principal in the drug conspiracy, he was not a low level or minor participant. The court considered all the sentencing factors enumerated in 18 U.S.C. § 3553(a) and sentenced Mr. Glaria-Ramirez to serve concurrent terms of 126 months on the two counts, followed by five years of supervised release. Mr. Glaria-Ramirez did not file a direct appeal.

Instead, Mr. Glaria-Ramirez filed the instant 28 U.S.C. § 2255 motion on October 29, 2012. He raised two claims of ineffective assistance of counsel: 1) his counsel was ineffective for failing to object to the district court's entry of judgment on his guilty plea for the conspiracy charge when there was no factual basis for the conspiracy offense; and 2) his counsel was ineffective for failing to argue that the evidence showing an agreement to possess with intent to distribute methamphetamine was insufficient.

Applying the appropriate standard of Strickland v. Washington, 466 U.S. 668 (1984), the district court denied Mr. Glaria-Ramirez's § 2255 motion, noting that "the evidence establishing Mr. Glaria-Ramirez's guilt was overwhelming and demonstrated that there were sufficient facts to establish Mr. Glaria-Ramirez's

guilt.  As such, . . .  the Court finds Mr. Glaria-Ramirez's claims must be dismissed."  Order at 10, R. Vol. 1 at 78.  This request for a COA followed.[1]

## DISCUSSION

To obtain a COA, Mr. Glaria-Ramirez must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make the requisite showing, he must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quotations omitted).  In evaluating whether Mr. Glaria-Ramirez has satisfied his burden, this court undertakes "a preliminary, though not definitive, consideration of the [legal] framework" applicable to each of his claims.  Id. at 338.  To be entitled to a COA, Mr. Glaria-Ramirez need not demonstrate his appeal will succeed, but he must "prove something more than the absence of frivolity or the existence of mere good faith."  Id. (quotations omitted).

We note that, even though Mr. Glaria-Ramirez did not file a direct appeal, he may, and indeed should, argue ineffective assistance of counsel in this collateral proceeding.  See Massaro v. United States, 538 U.S. 500, 504 (2003)

---

[1]The district court granted Mr. Glaria-Ramirez permission to proceed on appeal *in forma pauperis*.

('[A]n ineffective-assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."). As we have stated, "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal." United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc).

In Strickland, the Supreme Court announced a two-part test that governs ineffective-of-assistance claims. 466 U.S. at 687. First, "[a] petitioner must show that counsel's performance was deficient." Wiggins v. Smith, 539 U.S. 510, 521 (2003). Second, a petitioner must show that counsel's deficiency "prejudiced the defense." Id.

"To establish deficient performance, a petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness." Id. (internal quotation marks omitted); see Strickland, 466 U.S. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). A petitioner must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish Strickland's prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

Invoking these principles, Mr. Glaria-Ramirez renews the two ineffectiveness claims that he raised in the district court. Thus, he argues his counsel was ineffective in failing to object to the district court's entry of judgment on his guilty plea when there was allegedly no factual basis for the conspiracy and in failing to argue that the evidence showing an agreement to possess with intent to distribute methamphetamine was insufficient. He also assigns error to the district court's failure to conduct an evidentiary hearing into his ineffectiveness claims.

We address this last argument first. "A district court's decision to grant or deny an evidentiary hearing in a habeas proceeding is reviewed for an abuse of discretion." Hooks v. Workman, 606 F.3d 715, 731 (10th Cir. 2010). Because, as we demonstrate below, "each of [Mr. Glaria-Ramirez's] claims of ineffective assistance of trial counsel is resolvable solely on the basis of the existing record, the district court did not abuse its discretion in denying [his] general request for an evidentiary hearing." Id. "Likewise, the general and conclusory nature of the allegations in [Mr. Glaria-Ramirez's] request for an evidentiary hearing[] fully support the district court's decision to deny that request." Id. We find no abuse of discretion in the district court's denial of Mr. Glaria-Ramirez's request for an evidentiary hearing.

With respect to the merits of the two ineffectiveness claims, the district court rejected them after analyzing both parts of the Strickland analysis. The court below, and we, address each argument in turn.

Mr. Glaria-Ramirez first argues his counsel was ineffective in failing to object on the ground that there was an inadequate factual basis for his guilty plea to conspiracy. As the district court found, the trial court "ensured that Mr. Glaria-Ramirez provided a factual basis to support the conspiracy charge during his change of plea hearing." Order at 10, R. Vol. 1 at 78. The district court further explained:

> During his change of plea hearing, Mr. Glaria-Ramirez admitted he supplied in excess of 50 grams, actual, methamphetamine to Mr. Maldonado on July 23, 2011 while in Utah. He then affirmatively answered that he knew that Mr. Maldonado was going to sell the methamphetamine in Wyoming. Additionally, Mr. Glaria-Ramirez admitted he used his own vehicle to transport Mr. Maldonado and the methamphetamine from Utah to the location of sale in Wyoming on July 25, 2011. Based on the information provided, the Court concluded that Mr. Glaria-Ramirez made his plea knowingly and voluntarily, with an adequate understanding of the charges and their consequences, after consultation with competent counsel. The Court concluded that Mr. Glaria-Ramirez provided a sufficient factual basis to establish each and every essential element of the crime to which he pled. Thus, the facts presented at the change of plea hearing established Mr. Glaria-Ramirez's role as supplier, courier and facilitator to the conspiracy to distribute methamphetamine in Wyoming.

Id. at 11, R. Vol. 1 at 79.

The district court further noted that this case presented the unusual circumstance that, while Mr. Glaria-Ramirez ultimately pled guilty, he did so

after two days of trial testimony, including testimony by key co-conspirators. "Rule 11(f) permits the trial judge to find the factual basis for the plea in anything that appears in the record." United States v. Keisetter, 860 F.2d 992, 996 (10th Cir. 1988). That "additional evidence provides even further support to the finding of an adequate factual basis to Mr. Glaria-Ramirez's guilty pleas, his participation in the conspiracy and his involvement in 'The Old Man's' Mexican drug trafficking organization." Order at 12, R. Vol. 1 at 80. As the district court summarized, "this Court concludes the facts presented at the change of plea hearing, the trial testimony and the pre-sentence report establish that Mr. Glaria-Ramirez came to a mutual understanding with co-conspirators to try to accomplish a common and unlawful plan to distribute methamphetamine in Wyoming, thus clearly establishing a factual basis for Mr. Glaria-Ramirez's guilty plea." Id. at 13, R. Vol. 1 at 81. We accordingly cannot find fault with the district court's conclusion that Mr. Glaria-Ramirez's attorney was not ineffective in failing to object to the sufficiency of the evidence supporting his guilty plea to conspiracy.

Mr. Glaria-Ramirez next argues that his attorney was ineffective for failing to argue that the evidence was insufficient to show that Mr. Glaria-Ramirez entered into an agreement with "The Old Man," Mr. Maldonado, Ms. Russell and others to possess with the intent to deliver methamphetamine. This argument is equally unavailing. "[C]ircumstantial evidence is sufficient to prove . . . the

-11-

existence of an agreement." United States v. Brooks, 736 F.3d 921, 938 (10th Cir. 2013). "[T]he agreement requirement may be satisfied entirely through circumstantial evidence; that is, it may be inferred from the facts and circumstances of the case." United States v. Clark, 717 F.3d 790, 805 (10th Cir. 2013) (further quotations and citations omitted).

We agree with the district court's conclusion that, "[a]s has already been established in Mr. Glaria-Ramirez's first claim, the evidence in this case is more than sufficient to establish that an agreement was made to carry out a common, unlawful plan to distribute methamphetamine in Wyoming." Order at 14, R. Vol. 1 at 82. Accordingly, "because the evidence more than adequately established Mr. Glaria-Ramirez's role in the conspiracy to distribute methamphetamine in Wyoming, his counsel was not inadequate for failing to object on these grounds." Id. at 15, R. Vol. 1 at 83. No reasonable jurist could debate that determination.

Even though the district court correctly determined that Mr. Glaria-Ramirez failed to show that his counsel had performed ineffectively, the court went on to conclude that both of his ineffectiveness claims would fail under the second (prejudice) prong of Strickland. It is clear that "a reviewing court may consult the whole record when considering the effect of any error on substantial rights." United States v. Vonn, 535 U.S. 55, 59 (2002); United States v. Edgar, 348 F.3d 867, 872 (10th Cir. 2003). The record in this case more than adequately establishes that, as the district court found, "Mr. Glaria-Ramirez has failed to

establish that his attorney's performance was deficient, or further, that if it were, there would be a reasonable probability the outcome of the proceeding would have been different."  Order at 16, R. Vol. 1 at 84.

## CONCLUSION

For the foregoing reasons, we DENY a COA and DISMISS this matter.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge