**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 21 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

# UNITED STATES COURT OF APPEALS
## TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

GINA R. GIGOT, also known as Gina
R. Herrmann,

      Defendant-Appellant,

No. 97-3117

---

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 96-10025-DES)

---

James Martin Davis of Omaha, Nebraska, for Defendant-Appellant.

Michael G. Christensen, Assistant United States Attorney (Jackie N. Williams, United States Attorney, and Montie R. Deer, Assistant United States Attorney, with him on the brief), Wichita, Kansas, for Plaintiff-Appellee.

---

Before **SEYMOUR**, Chief Judge, **EBEL** and **KELLY**, Circuit Judges.

---

**SEYMOUR**, Chief Judge.

Gina Gigot was convicted on December 18, 1996, of one count of mail fraud in violation of 18 U.S.C. § 1341, and one count of making willful false statements relating to matters before the United States Department of Agriculture in violation of 15 U.S.C. § 714m(a), after she pled guilty pursuant to a plea agreement. Following the entry of her guilty plea, the district court sentenced Ms. Gigot on each count to concurrent fifteen-month terms of imprisonment and three-year terms of supervised release, and ordered her to pay a fine in the amount of $200,000. Ms. Gigot now appeals her conviction, arguing that the district court neglected in various ways to follow Fed. R. Crim. P. 11, and that due to this failure her plea was involuntary and therefore invalid. We reverse.

**I.**

The facts surrounding the district court's and the government's conduct prior to and during the hearing on Ms. Gigot's plea are essentially uncontroverted.[1] On February 28, 1996, the government filed a four-count indictment in the district court. Count I charged Ms. Gigot with mail fraud, while Counts II through IV charged her with making willful false statements to the Department of Agriculture. After several weeks of trial Ms. Gigot agreed to

---

[1]The facts relating to the substantive charges against Ms. Gigot and her actual guilt or innocence are not relevant to this appeal.

plead guilty to Counts I and II and to testify in a related matter in exchange for the government's agreement to move for dismissal of Counts III and IV, to recommend a two-level reduction in Ms. Gigot's sentence for acceptance of responsibility, and to move for a downward departure pursuant to section 5K1.1 of the sentencing guidelines to a sentence of eighteen months' home confinement and a $200,000 fine in lieu of imprisonment. Ms. Gigot was made aware that the district court was not bound by the plea agreement and could therefore impose any sentence permitted by statute and the relevant sentencing guidelines. However, the plea proceeding was marred by an unfortunate series of events culminating in the present appeal.

Rather than personally addressing Ms. Gigot during the change of plea proceeding, the district court directed the government through the Assistant United States Attorney (AUSA) to recite the minimum and maximum penalties for each charge against her. This exchange proceeded as follows:

| | |
|---|---|
| THE COURT: | Would the United States attorney tell the Court for the record what the penalties are for the crimes alleged in Counts I and II of this indictment? |
| AUSA: | I believe the maximum, Your Honor, is 30 years, and it's a minimum of two years. Is that right? |
| MORIARTY: | Post-release? |
| AUSA: | Yes. |

| | |
|---|---|
| MORIARTY: | Two to three years and a fine not to exceed $1 million. |
| THE COURT: | On each count? |
| AUSA: | Yes, sir. |

Aplt. App. at A-6. In discussing the penalties, neither the court, the AUSA, nor defense counsel explained whether the penalties applied to the mail fraud charge, the false statements charge, or both. The same sentence does in fact apply to both charges.

Likewise, rather than explicitly informing Ms. Gigot of the elements of the various charges, the district court asked Ms. Gigot's defense counsel whether he wished to have the indictment read in open court. Defense counsel explicitly waived the reading of the indictment and stated his belief that Ms. Gigot fully understood the charges. When the district court asked Ms. Gigot whether she understood the charges against her, she replied: "Yes, I do." Id. at A-4. This succinct colloquy represents the sum total of the district court's inquiry into Ms. Gigot's understanding of the charges against her and the consequences of her plea.

It is undisputed that the AUSA (as well as Ms. Gigot's own counsel) misstated the minimum and maximum penalties for the charges against Ms. Gigot. In actuality, because the crimes with which she was charged did not involve a

-4-

financial institution, the maximum penalty was five years' imprisonment, three years' supervised release, and a fine not to exceed $250,000. The charged offenses carry no mandatory minimum sentence. It is further undisputed that the written plea agreement signed by Ms. Gigot during the change of plea hearing made no reference at all to supervised release and did not set forth the maximum penalties for the charged counts. Moreover, the petition to plead guilty signed by Ms. Gigot that same day, while correctly stating the period of supervised release, again misstated the maximum penalty as thirty years. The indictment did not specify the elements of either count with which Ms. Gigot was charged, nor were the elements set forth in the written plea agreement signed prior to the change of plea hearing.[2] It is undisputed that the Presentence Investigation Report (PSR),

---

[2]The essential elements for obtaining a conviction under 18 U.S.C. § 1341 are:

(1) the devising of a scheme or artifice either (a) to defraud or (b) for obtaining money by means of false or fraudulent pretenses, representations, or promises, (2) the specific intent to defraud, and (3) the use of the United States mails to execute the scheme.

United States v. Kennedy, 64 F.3d 1465, 1475 (10th Cir. 1995).

The essential elements for obtaining a conviction under 15 U.S.C. § 714m(a) are:

1) a statement; 2) that is false; 3) the defendant knows it to be false; and 4) the defendant makes it for the purpose of either influencing action of the [Commodity Credit Corporation (CCC)] or obtaining

(continued...)

*provided to Ms. Gigot two months after the plea hearing*, correctly stated the relevant penalties.[3] It is also undisputed, however, that Ms. Gigot was never at any point explicitly informed of the elements of the charges against her.

At sentencing, the district court accepted the government's recommendation that Ms. Gigot be fined $200,000. The court declined, however, to follow the government's recommendation to depart downward to a sentence of eighteen months' home confinement and instead sentenced Ms. Gigot to concurrent terms of fifteen months' imprisonment and three years' supervised release.

Ms. Gigot asserts on appeal that in accepting her plea the district court failed to follow the procedures mandated by Fed. R. Crim. P. 11. Specifically, she alleges the following deficiencies: 1) the district court failed to advise her personally of any of the penalties she would face; 2) the court allowed her to accept a plea agreement containing a recommended sentence the court could not legally impose; 3) the court failed to advise her that she could face a term of supervised release and the effects thereof; and 4) the court failed to advise her in

---

[2](...continued)
something of value under an act applicable to the CCC.

United States v. Huntsman, 959 F.2d 1429, 1437 (8th Cir. 1992).

[3]Although she does not dispute the PSR's statement of the applicability of supervised release to her case or the maximum and minimum terms contained therein, Ms. Gigot does contend that she did not understand the meaning of "supervised release" at least partly because the PSR did not give a definition.

any form of the elements of the offenses with which she was charged or the correct minimum and maximum penalties she faced. As a result of these alleged errors, Ms. Gigot contends her plea was not knowingly, intelligently, and voluntarily made and must therefore be set aside. We conclude that the court's failure to advise Ms. Gigot of the elements of the offenses and the correct penalties mandates reversal and we therefore do not address her other allegations of error.

## II.

## A.

Rule 11 of the Federal Rules of Criminal Procedure "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." McCarthy v. United States, 394 U.S. 459, 465 (1969). Whether a district court has complied with Rule 11 in accepting a defendant's plea and, accordingly, whether the defendant's plea was knowing, intelligent, and voluntary, is a question of law we review de novo. See United States v. Browning, 61 F.3d 752, 753 (10th Cir. 1995); United States v. Gomez-Cuevas, 917 F.2d 1521, 1524 (10th Cir. 1990).

Rule 11 provides in relevant part:

(c) **Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open

court and inform the defendant of, and determine the defendant understands, the following:

> (1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense . . . .

Fed. R. Crim. P. 11(c)(1). The court must further determine, "by addressing the defendant personally in open court," that the plea sought to be entered is voluntary. Fed. R. Crim. P. 11(d). "[T]o determine whether a plea is voluntary, a court must assess whether the defendant fully understood the consequences of the plea." United States v. Williams, 919 F.2d 1451, 1456 (10th Cir. 1990).

Although district courts are required to comply with the procedures set forth in Rule 11, their failure to do so does not call for automatic reversal on direct appeal. Rather, "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded" as harmless error. Fed. R. Crim. P. 11(h). However, subdivision (h) "should not be read as supporting extreme speculative harmless error claims or as, in effect, nullifying important Rule 11 safeguards." Fed. R. Crim. P. 11(h) advisory committee's note (1983 Amendment). Rule 11 clearly contemplates that departures from mandated procedures will be considered harmless only in "limited" circumstances. Id.

("[I]t is fair to say that the kinds of Rule 11 violations which might be found to constitute harmless error upon direct appeal are fairly limited . . ."); Gomez-Cuevas, 917 F.2d at 1524 & nn.2-3 (noting that one who knowingly and voluntarily pleads guilty evinces a desire to waive "technicalities," but that careful compliance with Rule 11 remains best way to serve ends of fair and efficient administration of criminal justice); United States v. Barry, 895 F.2d 702, 705 (10th Cir. 1990) (subsection 11(h) harmless error rule not applied lightly); United States v. Theron, 849 F.2d 477, 481 (10th Cir. 1988) (same). Application of the analysis contemplated by Rule 11(h) is part of our de novo review of the plea proceeding. See United States v. Vaughn, 7 F.3d 1533, 1535 (10th Cir. 1993). See generally United States v. Dewalt, 92 F.3d 1209 (D.C. Cir. 1996).

An error in a Rule 11 proceeding is not harmless unless "we are convinced that . . . substantial rights were not detrimentally affected and that the district court's error had no significant influence on [the] decision to plead guilty." Vaughn, 7 F.3d at 1535. We will not hold a Rule 11 defect harmless where the plea is a product of a "material misrepresentation" relied on by the defendant. See Williams, 919 F.2d at 1456. Nor will we find harmless error where "[t]here is a reasonable possibility that [defendant] was confused in a way that compliance with Rule 11 could have remedied." Theron, 849 F.2d at 481. This standard was succinctly articulated by the Fifth Circuit as follows:

To determine whether a Rule 11 error is harmless (i.e., whether the error affects substantial rights), we focus on whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty. Stated another way, we "examine the facts and circumstances of the . . . case to see if the district court's flawed compliance with . . . Rule 11 . . . may reasonably be viewed as having been a material factor affecting [defendant]'s decision to plead guilty."

United States v. Johnson, 1 F.3d 296, 302 (5th Cir.1993) (en banc) (quoting

United States v. Bachynsky, 934 F.2d 1349, 1360 (5th Cir. 1991) (en banc)).[4]

This formulation of the inquiry is faithful both to the constitutional

concerns Rule 11 was meant to further, as well as to the requirement that errors in

such proceedings be carefully scrutinized in order to ensure that pleas are not set

aside for purely formal reasons. In applying this standard, we keep in mind that

"'the values lying at the heart of the rule's concerns [are] absence of coercion,

understanding of the accusation, and knowledge of the direct consequences of the

plea.'" Gomez-Cuevas, 917 F.2d at 1525 (quoting United States v. Dayton, 604

---

[4]Versions of this rule are in force in several circuits. See, e.g., United States v. Richardson, 121 F.3d 1051, 1058 (7th Cir. 1997) (harmlessness inquiry focuses on "'whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty'") (quoting United States v. Padilla, 23 F.3d 1220, 1221 (7th Cir. 1994)); United States v. McCarthy, 97 F.3d 1562, 1575 (8th Cir. 1996) (adopting Seventh Circuit analysis); United States v. Dewalt, 92 F.3d 1209, 1214 (D.C. Cir. 1996) (error harmless if record reveals defendant had actual notice of information court failed to convey or that the information would not have been important to defendant in entering his plea); United States v. Goins, 51 F.3d 400, 402 (4th Cir. 1995) (citing Johnson, 1 F.3d at 302).

F.2d 931, 939 (5th Cir. 1979) (en banc)).

**B.**

Ms. Gigot alleges that the district court's failure to inform her of the elements of the crimes with which she was charged, as well as its failure to inform her of the proper penalties she faced, kept her from making a knowing, intelligent, and voluntary plea. At oral argument the government candidly (to its credit) admitted the procedural deficiencies in Ms. Gigot's change of plea proceeding.[5] Ms. Gigot did not receive explanation of the elements of the charges from any other source. Moreover, not only did she fail to receive notice of the proper maximum penalties she faced, Ms. Gigot was actually given material misinformation.

Rule 11(c) requires the district court to inform the defendant of and to ensure she understands the nature of the offenses to which she is pleading. While

---

[5]The government acknowledged at oral argument that Ms. Gigot was not explicitly informed of the elements of the offenses, that she was misinformed of the penalties, and that neither the government nor the court had any reason to believe Ms. Gigot had a correct understanding of any of these issues at the time of sentencing. The government further acknowledged that neither it nor the court had any basis on which to conclude Ms. Gigot had any idea she could make a motion to the district court to withdraw her plea. Finally, the government conceded neither the government nor the court ever told Ms. Gigot she had received inadequate and incorrect information, and that the record offers no basis on which to conclude that Ms. Gigot had sufficient information to prompt her to make a motion to withdraw in the district court based on Rule 11 violations.

the procedures mandated by Rule 11 are not themselves constitutionally required, the court *is* constitutionally required to determine that a defendant's plea is "truly voluntary." McCarthy, 394 U.S. at 466. "Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts." Id. In most cases, therefore, "[s]ome rehearsal of the elements of the offense is necessary." United States v. Syal, 963 F.2d 900, 905 (6th Cir. 1992). In this case, it is undisputed that Ms. Gigot was never informed by the indictment or otherwise of the elements of the offenses to which she pled guilty. See supra note 2. It is also undisputed that the charges against Ms. Gigot were far from simple or straightforward. Although the indictment details certain acts Ms. Gigot is alleged to have committed, it does not explain the legal significance of those factual allegations, set out each element of the offenses, or in any way identify what the government was required to prove in order to obtain a conviction. See Syal, 963 F.2d at 905. While Ms. Gigot did sit through several weeks of trial, she entered her plea prior to the reading of any jury instructions and the trial itself did not otherwise reveal the elements of the offenses. Id. Nor did the court inquire into the basis for Ms. Gigot's belief that she was guilty of the crimes charged. Compare Gomez-Cuevas, 917 F.2d at 1525 (finding harmless error where it was clear from defendant's statements at plea hearing that he

understood elements of offense even though elements not formally explained).

Rule 11(c) also requires the district court, prior to accepting a plea, to inform the defendant of the maximum possible penalty and any mandatory minimum penalty. In this case, the district court (through the AUSA)[6] misinformed Ms. Gigot that the maximum penalty for the offense with which she was charged was thirty years when in fact it was five years, and that the maximum fine was $1 million when the correct amount was $250,000. This error was repeated in the petition to plead guilty, which Ms. Gigot signed and certified she "understood." Obviously, however, this "understanding" was based on an underlying erroneous predicate. A plea must "constitute a deliberate, intelligent choice between available alternatives" in order to be knowingly and intelligently made. United States v. Rhodes, 913 F.2d 839, 843 (10th Cir. 1990) (quoting United States v. Fernandez, 877 F.2d 1138, 1142 (2d Cir. 1989) (internal

---

[6]In her brief, Ms. Gigot argues that in deferring to the AUSA, the district court violated the plain terms of Rule 11(c) which provides that "the court must address the defendant personally and in open court." Because we vacate the plea on other grounds, we do not reach this claim or consider whether such error may be harmless. Nor do we reach the question of whether such an error might be held harmless in a case (unlike this one) where the information provided by the government is correct. However, we do point out that the Advisory Committee's notes specifically provide "it would not be harmless error if the trial judge totally abdicated to the prosecution the responsibility for giving to the defendant the various Rule 11 warnings, as this 'results in the creation of an atmosphere of subtle coercion that clearly contravenes the policy behind Rule 11.'" Fed. R. Crim. P. 11(h) advisory committee's note (1983 Amendment) (quoting United States v. Crook, 526 F.2d 708 (5th Cir. 1976)).

-13-

quotations omitted)).  Because Ms. Gigot did not know the elements of the crimes with which she was charged and because she was not informed of the correct penalties for those crimes, her plea necessarily was not a "deliberate" choice between "available alternatives."

We must next address whether these deficiencies in Ms. Gigot's plea affected her substantial rights or were "minor and technical violation[s] of Rule 11 which amount[] to harmless error."  Fed. R. Crim. P. 11(h) advisory committee's note (1983 Amendment).  We conclude that the district court's failure to ensure that Ms. Gigot was informed of the elements of the crimes with which she was charged, its failure to inform her of the correct maximum penalties she faced, and the fact that the record contains no evidence she actually did know the elements or the penalties, when taken together, would have been reasonably likely to affect Ms. Gigot's decision to plead guilty.  In particular, as we have pointed out above, Rule 11(h) "should not be read as . . . nullifying important Rule 11 safeguards," id.  Here, two of the three core values of Rule 11 were not served.  First, the record contains no evidence that Ms. Gigot could have or did understand the charges against her.  Moreover, given that she was inundated with erroneous information regarding the maximum penalty, she could not have had knowledge of the direct consequences of her plea.  That the correct penalties were at long last set forth in the PSR does not cure the defects in the Rule 11

proceeding, not least because Ms. Gigot did not receive the PSR until after her plea had already been accepted.  See Goins, 51 F.3d at 404 (holding violations of Rule 11 cannot be cured by the PSR).

That Ms. Gigot subsequently received a sentence far less onerous than the thirty-year maximum she believed she faced does not favor the government.  It is more than possible that Ms. Gigot might have chosen to take her chances with a jury trial had she thought the worst-case scenario was a five-year prison sentence and a $250,000 fine rather than the thirty years of confinement and $1 million fine she mistakably believed she faced.  Moreover, we do not find Ms. Gigot's failure to attempt to withdraw her plea prior to sentencing significant as she was operating under misinformation up until the moment she was sentenced and beyond.[7]  In short, a case such as this one, where the defendant was not merely deprived of a mandated procedure but was actually deprived of the *substantive material information* contemplated by Rule 11 as necessary to make a voluntary plea, is not one of those "limited" instances in which we will hold an error to be harmless on direct appeal.  See Theron, 849 F.2d at 481; see also United States v. Longoria, 113 F.3d 975, 977 (9th Cir. 1997) (harmless error meant to apply to "minor or technical" violations of Rule 11).  We thus cannot conclude Ms.

---

[7]It is worth noting in this context that Ms. Gigot's trial counsel contributed to the misinformation that abounded at the plea proceeding and apparently did not notice the procedural defects prior to or at sentencing.

Gigot's plea was entered knowingly, intelligently, and voluntarily.

## III.

In conclusion, the district court's failure to inform Ms. Gigot of the charges against her and the correct penalties she faced in violation of Fed. R. Crim. P. 11 was not harmless. Because Ms. Gigot's substantial rights were thereby impaired, we **REVERSE** and **REMAND** to the district court with instructions to vacate the guilty plea and conduct further proceedings consistent with this opinion.