**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 10 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOSEPH RUSSO,

Defendant-Appellant.

No. 98-3245

District of Wyoming

(D.C. No. 97-10155-01-MLB)

**ORDER AND JUDGMENT** *

Before **BRORBY** , **HENRY** , and **LUCERO** , Circuit Judges.


On May 27, 1998, Joseph Russo pleaded guilty to knowingly and willfully

making a false statement to the federal government in violation of 18 U.S.C. §

1001. The court sentenced him to twenty-one months imprisonment and ordered

him to pay restitution in the amount of $480,000. Mr. Russo appeals the

judgment and sentence imposed by the district court on the following grounds: 1)

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

his plea was involuntary because the district court failed to inform him that as part of his sentence the court could order restitution in the amount of $480,000; 2) there was an insufficient factual basis for his guilty plea and the court failed to establish that Mr. Russo understood the nature of the charge to which he pleaded guilty, and 3) the court erred in finding that the amount of loss was greater than $500,000 for purposes of computing Mr. Russo's offense level. [1]

For the following reasons we conclude that Mr. Russo's plea was not involuntary for lack of notice that the court could order restitution as part of his sentence. We further conclude that the district court established a sufficient factual basis for Mr. Russo's guilty plea and that Mr. Russo fully understood the nature of the crime to which he pleaded guilty. Finally, because Mr. Russo failed to object to the amount of loss used to compute his offense level at the sentencing hearing, he has failed to preserve this issue for appeal.

## I. BACKGROUND

Appellant, Joseph Russo, and the deceased co-defendant, Edward James Garner, Jr., entered into an agreement to establish a building materials manufacturing business known as Panel Building Systems, Inc. (PBS). For the

---

[1]Mr. Russo also filed two motions with the court. The motion to file a pro se supplemental reply brief is granted. The motion for expedited review and reconsideration of motion for bail pending appeal is denied.

purpose of obtaining capital to start this business, Mr. Russo applied for a $630,000 loan from the United States Small Business Administration (SBA) through the First Neodesha Bank in Neodesha, Kansas. On the application Mr. Russo stated that he was president and 100% owner of the company. First Neodesha Bank forwarded the application to the SBA on June 21, 1993. The SBA approved the loan on September 15, 1993. Between October 1, 1993 and December 10, 1993, approximately $585,000 of the $630,000 loan had been disbursed to PBS through First Neodesha Bank. PBS eventually defaulted on the loan, causing the SBA a loss of approximately $480,000.

As part of its investigation into the defaulted loan the SBA interviewed Mr. Russo on three separate occasions. During the course of these interviews, the SBA learned that Mr. Garner, rather than Mr. Russo, was the president and 100% owner of PBS at the time the loan application was completed. The corporate books for PBS reflected that on May 5, 1993 Mr. Garner had been appointed as sole director of PBS. On July 15, 1993, Mr. Garner had voted himself sole director of PBS, and the following day Mr. Garner voted himself as president, vice-president, treasurer, secretary. Mr. Garner was also listed as the sole shareholder of all 500 shares of PBS stock. On March 28, 1994, Mr. Garner resigned all of his positions but retained 50 shares of stock.

On December 17, 1997, Mr. Russo was charged with two counts of making

3

a false statement on a loan application in violation of 18 U.S.C. § 1014, and with one count of making a false writing on an SBA loan guarantee in violation of 18 U.S.C. § 1001. On May 26, 1998, Mr. Russo pleaded guilty to making a false writing on an SBA loan guarantee. The government dismissed the other charges.

In his Petition to Enter a Plea of Guilty (Petition), Mr. Russo stated, "I made a false writing that I was President of Panel Systems, Inc., when I knew that Everett James Garner was the President. I did this to obtain an SBA Loan Guaranty for Panel Systems, Inc." Rec. vol. I, doc. 19, at ¶ 5. In the Petition Mr. Russo also acknowledged that he had been informed that the plea of guilty could subject him to a fine of $250,000 and that the court could order him to pay restitution. See id. at ¶ 10. The Petition did not, however, specify any amount of potential restitution.

During the plea colloquy Mr. Russo admitted to the court that he had gone over the Petition with his attorney, he understood it, he was aware of the fact that he signed it under oath, and that he had no questions about the Petition. See Rec. vol. III., doc. 41, at 18. Later on during the plea hearing, the government stated that it would present the following evidence in support of its prosecution of Mr. Russo under 18 U.S.C. § 1001:

> Your Honor, the evidence of the United States would be that Everett James Garner, Jr. had met the Defendant and Mr. Garner formed a corporation known as Panel Building Systems Incorporated here in Kansas and he was a sole stockholder and officer of the company. That it was determined

4

between the Defendant and Mr. Garner that they would apply for a loan at the First Neodesha State Bank to be determined by the SBA. They completed the paperwork. All the paperwork would indicate in fact instead of Mr. Garner being president, that in fact Mr. Russo was the president of the company. They applied for a loan and one was granted for $650,000 on October 1st, 1993. Mr. Russo indicated on the loan guarantee document that in fact he was the president of the corporation and the loan was granted. The loan was defaulted upon, a loss to SBA of approximately $474,000. The materiality of the statement about being the president, Your Honor, was that SBA required financial information on the president and stockholders of the corporation. Mr. Garner had a substantially poor financial record and if he would have indicated – if they would have indicated the true ownership of the corporation, the loan would not have been approved. And that would – and further, Your Honor, the SBA is part of the executive branch of the United States government. Part of the events that occurred in the District of Kansas. And that would be the evidence of the United States, Your Honor.

Id. at 24-25.

Following the government's statement, the court asked Mr. Russo to explain in his own words what he did. Mr. Russo responded, "On the application to the SBA in regards to their guaranteeing the loan for the bank, First Bank of Neodesha, I signed as president and CEO when in fact at that time Mr. Garner was president and CEO." Rec. vol. III, doc. 41, at 26. Upon further inquiry by the court as to his motivations for making the false statements, Mr. Russo explained that "it was always intended from day one that I was to be president and CEO." Id. When asked to respond to the government's assertion that Mr. Garner's financial situation was poor and that the loan may not have been granted if Mr. Garner had been listed on the application as the president of PBS, Mr. Russo persisted that "there was never any participation whatsoever planned for

5

Mr. Garner."  Id. at 26.  Further, he claimed that he was not aware of Mr. Garner's poor credit, and "was under the impression he was a wealthy man."  Id. at 27.  However, Mr. Russo admitted that he knew that had Mr. Garner been listed as president on the loan application, the SBA would have investigated Mr. Garner's financial history and not his.  See id. at 28.

At the conclusion of the plea hearing, the district court found that Mr. Russo's plea "ha[d] been made freely, voluntarily and because he is guilty as charged and not out of ignorance, fear, inadvertence or coercion and with full understanding of its consequence."  Id. at 39.  Mr. Russo was sentenced to twenty-one months imprisonment and, as a condition to his supervised release, was ordered to pay restitution in the amount of approximately $480,000.

## II.  DISCUSSION

### A.  Notice of Restitution

First, Mr. Russo argues that his plea was not voluntary because the district court failed to inform him, prior to or during his plea hearing, of the possibility that the court would require him to pay $480,000 in restitution.  Rule 11 of the Federal Rules of Criminal Procedure addresses what is required before a plea of guilty can be accepted.  The rule "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea

6

is truly voluntary." United States v. Gigot, 147 F.3d 1193, 1197 (10th Cir. 1998) (quotation omitted). "Whether a district court has complied with Rule 11 in accepting a defendant's plea and, accordingly, whether the defendant's plea was knowing, intelligent, and voluntary, is a question of law we review de novo." Id.

At the time Mr. Russo entered his plea of guilty "he was entitled to an explanation of the consequences of his conviction, including the court's authority to order restitution." United States v. Pogue, 865 F.2d 226, 228 (10th Cir. 1989) (citing Fed. R. Crim. P. 11(c)(1)). The record shows that the court did not advise Mr. Russo of the possibility of restitution or the potential amount during the plea colloquy. However, Mr. Russo signed the Petition which stated: "My lawyer informed me that the plea of "GUILTY" could subject me to . . . a fine of $250,000 . . . . I have also been informed that the Court may order me to make restitution . . . as a condition of my supervised release." Rec. vol. I, doc. 19, at ¶ 10. At the plea colloquy, Mr Russo admitted that he had read the Petition with his lawyer, understood it fully, realized that he was signing it under oath, and did not have any further questions regarding it. See Rec. vol. III., doc. 41, at 18. Further, at the plea hearing, the government stated that the fraudulently attained loan resulted in "a loss to SBA of approximately $474,000." Id. at 25. Thus, the government argues that Mr. Russo had notice of both the possibility and amount of restitution at the time of his guilty plea.

In the present case, however, we do not need to decide whether Mr. Russo had sufficient notice of restitution prior to entering his guilty plea. A violation of Rule 11 for failure to inform a defendant of the possibility that restitution could be ordered as a consequence of his guilty plea is subject to harmless error analysis. See id. More importantly, we have held that where a defendant is given an opportunity to withdraw his plea after being made aware of the restitution order at sentencing, he "suffer[s] no prejudice from the omission of any reference to restitution at the time of his plea." Pogue, 865 F.2d at 229.

Here, Mr. Russo was informed at his sentencing hearing that the court sought to impose restitution in the amount of $480,000. See Rec. vol. II, doc. 30, at 10. Later during the hearing, Mr. Russo was given the opportunity to withdraw his guilty plea. See id. at 16-17. In fact, the district court judge recessed the sentencing hearing so Mr. Russo could confer in private with his attorney about withdrawing his plea. See id. at 18-19. When the hearing re-convened, Mr. Russo informed the court that he did not wish to withdraw his plea. See id. at 20. Therefore, we conclude that even if the court erred in failing to inform Mr. Russo of the possibility of restitution at the plea hearing, the fact that Mr. Russo failed to seize the opportunity to withdraw his plea after being informed at the sentencing hearing that the court intended to order restitution in the amount of $480,000 made any such error harmless.

8

## B.  Factual Basis For the Plea

Next, Mr. Russo alleges that the district court erroneously failed to establish a sufficient factual basis for his plea in violation of Fed. R. Civ. P. 11(f). [2]  In support of his challenge, Mr. Russo contends that there was no evidence that he possessed willful intent or that the false statement was material, both necessary elements for a conviction under 18 U.S.C. § 1001.

As discussed, "[w]hether a district court has complied with Rule 11 in accepting a defendant's plea and, accordingly, whether the defendant's plea was knowing, intelligent, and voluntary is a question of law we review de novo." Gigot, 147 F.3d at 1197.  Fed. R. Civ. P. 11(f) specifically requires a court to satisfy itself that there is a factual basis for the guilty plea before entering judgment.  "The acceptance of a guilty plea is deemed a factual finding that there is an adequate factual basis for the plea [and] review [is] under the clearly erroneous standard."  United States v. Blair, 54 F.3d 639, 643 (10th Cir. 1995).

Courts have resolved that "Rule 11 does not require the judge to establish through colloquy that a factual basis exists for the plea.  The court may conclude

---

[2]Mr. Russo also argues that the court violated Rule 11(c)(1) by failing to ensure that he fully understood the nature of the charge to which he was pleading guilty.  Based on our review of the record and the foregoing analysis, we conclude that the district court fully complied with Rule 11.

that a factual basis exists from *anything that appears on the record*." United States v. DeFusco, 949 F.2d 114, 120 (4th Cir. 1991) (citing United States v. Lumpkins, 845 F.2d 1444, 1450 (7th Cir. 1988)) (emphasis added); see also United States v. Tunning, 69 F.3d 107,113-14 (6th Cir. 1995); United States v. Keiswetter, 860 F.2d 992, 996 (10th Cir. 1988), modified in part on reh'g en banc, 866 F.2d 1301 (10th Cir. 1989); . Therefore, any statements on the record made by the government prosecutors, see Keiswetter, 860 F.2d at 996; see also Tunning, 69 F.3d at 112, or "a signed statement of facts which [the defendant] admit[s] on the record [is] an accurate representation of what happened," DeFusco, 949 F.2d at 120, can support a factual basis for a guilty plea.

Even where a defendant affirmatively denies, or simply never admits, having possessed the necessary criminal intent for the crime to which he is pleading guilty, the court may nonetheless find a factual basis for the guilty plea through other evidence in the record. See United States v. Woolley, 123 F.3d 627, 634 n.10 (7th Cir. 1997) (district court did not err in finding a factual basis for a guilty plea based on the government's proffered evidence of intent, even though the defendant claimed that her statements during the plea colloquy negated unlawful intent); United States v. Wade, 940 F.2d 1375, 1379 (10th Cir. 1991) (concluding no error in finding factual basis for guilty plea amidst defendant's initial protestations during plea colloquy that he did not possess

willful intent); DeFusco, 949 F.2d at 120 (signed statement of facts to which defendant agreed on record was accurate was sufficient evidence to establish factual basis for guilty plea even though defendant "never admitted to having the necessary criminal intent for money laundering . . . ."); United States v. Alvarez-Quiroga, 901 F.2d 1433, 1438 (7th Cir. 1990) ("It is not necessary that the defendant acknowledge the truth of all the facts essential to guilt.").

First, Mr. Russo claims that, because his statements during the plea colloquy express an innocent explanation for making the false statements on his SBA loan application, he did not admit to possessing "willful intent." Specifically, he argues that because he believed that "it was . . . intended from day one that [he] was to be president," "there was never any participation whatsoever planned for Mr. Garner," and he "was under the impression [Mr. Garner] was a wealthy man," there was no factual basis that he willfully intended to deceive the government. However, for purposes of § 1001, we have held that "willful" does not require proof of evil intent but rather only that "the act [was] done deliberately and with knowledge." Walker v. United States, 192 F.2d 47, 49 (10th Cir. 1951); but see United States v. Ranum, 96 F.3d 1020, 1029 (7th Cir. 1996) (acknowledging circuit split over whether "willful" within the meaning of 18 U.S.C. § 1001 requires proof of "intent to deceive"). This interpretation is consistent with the broad, plain language of the statute, which

11

criminalizes, "mak[ing] any materially false . . . statement or representation; . . .mak[ing] or us[ing] any false writing or document *knowing the same to contain any materially false . . . statement* or entry." 18 U.S.C. § 1001 (emphasis added).

There is sufficient evidence on the record that Mr. Russo acted deliberately and with knowledge, and therefore, possessed willful intent. Mr. Russo's acknowledgments in the Petition, his statements at the plea colloquy, and the government's proffered evidence all establish that Mr. Russo listed himself as president of PBS on the SBA loan application when he knew that in fact Mr. Garner was president. See Rec. vol. I, doc. 19, at ¶ 5; vol. III, doc. 41 at 18, 24-25. We conclude that this is sufficient evidence of willful intent under § 1001 for purposes of establishing a factual basis for a guilty plea.

Mr. Russo also argues that there was an insufficient factual basis to establish that his false statement was material. Under 18 U.S.C. § 1001, "[a] falsification is material if it has a natural tendency to influence, or was capable of influencing, the decision of the tribunal in making a determination required to be made." United States v. Harrod, 981 F.2d 1171, 1176 (10th Cir. 1992).

At the plea colloquy, the government proffered evidence of the materiality of Mr. Russo's statement, stating "that SBA required financial information on the president and stockholders of the corporation. Mr. Garner had a substantially

poor financial record and if he would have indicated . . . the true ownership of the corporation, the loan would not have been approved." Rec. vol. III, at 25. Mr. Russo admitted that he was aware that had he listed Mr. Garner as president on the loan application the SBA would have inquired into Mr. Garner's financial background and not his. See id. at 28. This was sufficient factual basis for the court to find that the false statement was material.

To no avail, Mr. Russo relies on the following statement made by the district court during the colloquy: "The Supreme Court has held in a fairly recent decision that the jury must determine whether or not a misstatement is material as opposed to a judge determining it and that's why I'm raising this because I don't know." Rec. vol. III, doc. 41, at 29. Contrary to Mr. Russo's interpretation, the court was not saying that it did not know whether there was sufficient evidence of materiality for purposes of accepting Mr. Russo's plea. Rather, when taken in context, the court was merely fulfilling its duty to insure that Mr. Russo understood that materiality was a question for the jury, and that by pleading guilty he was waiving the possibility of a jury finding that the false statement was not material. See Rec. vol. III, doc. 41, at 29-30. Mr. Russo has misinterpreted the court's statement. It does not support the assertion that there was no factual basis for the plea.

Accordingly, we conclude that the district court established a sufficient

13

factual basis for Mr. Russo's guilty plea and was in full compliance with Rule 11.

### C. Calculation of Amount of Loss

Finally, Mr. Russo alleges that the district court erred in finding, for purposes of calculating Mr. Russo's offense level under the Sentencing Guidelines, that the amount of loss to the victim was greater than $500,000. Mr. Russo's pre-sentence report found that the loss was greater than $500,000, which resulted in an enhancement of ten levels pursuant to U.S.S.G. § 2F1.1(b)(1)(F). See Rec. vol. IV, at 8, ¶ 26. However, a preceding paragraph in the pre-sentence report found that the victim impact in the case was $479,739.95. Mr. Russo argues that he should have received only a nine level enhancement because the actual loss to the SBA was less than $500,000.

> Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure states:
>
> At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report.

"[F]ailure to object to any inaccuracies in the presentence report before the district court constitutes a waiver of the issue on appeal." United States v. Kay, 961 F.2d 1505, 1507 (10th Cir. 1992) (internal quotations and citations omitted); see also United States v. Deninno, 29 F.3d 572, 580 (10th Cir. 1994) ("Failure to

14

object to a fact in a pre-sentence report, or failure to object at the hearing, acts as an admission of fact."); United States v. Yates, 22 F.3d 981, 988 (10th Cir. 1994) ("Only facts that are contested at a sentencing hearing must be established by preponderance of the evidence.").

At the sentencing hearing, Mr. Russo asserted tentative disagreement with the loss figure in the pre-sentence report. See Rec. vol. II, doc. 30, at 5-7. When asked by the court if he wanted to raise the objection and defer sentencing until a later date so that the United States Attorney or the probation officer could respond to it and so that Mr. Russo could look into it as well, Mr. Russo and his attorney both declined. See id. at 7. We conclude Mr. Russo waived any objection to the calculation of the loss figure in the pre-sentence report and, therefore, he has failed to preserve this issue for appeal.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court judgment and sentence in all respects.

Entered for the Court,


Robert H. Henry
United States Circuit Judge

16