**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 8 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ABEL SAENZ,

Defendant - Appellant.

No. 00-1350

(D. Colorado)

(D.C. No. 99-CR-317-M)

**ORDER AND JUDGMENT** *

Before **BRISCOE** , **ANDERSON** , and **MURPHY** , Circuit Judges.

Abel Saenz pled guilty to one count of conspiracy to distribute or possess with intent to distribute 500 grams or more of cocaine. He was sentenced to 159 months imprisonment. He appeals that sentence. We affirm.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# BACKGROUND

Mr. Saenz and three others were indicted in September 1999 on a two count indictment. The first count charged them with conspiracy to distribute or to possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B)(ii). The second count charged them with distributing or possessing with the intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), and 18 U.S.C. § 2.

On November 19, pursuant to a Plea Agreement, Mr. Saenz pled guilty to the first count of the indictment and the government dismissed the second count of the indictment. The terms of the Agreement stated that it was made pursuant to Fed. R. Crim. P. 11(e)(1)(B). [1] The Agreement included the following:

> 6.  The parties understand that sentencing – and any departure from the applicable guideline range and the statutory mandatory minimum – is solely within the sound discretion of the Court.

---

[1] Fed. R. Crim. P. 11(e)(1)(B) provides that the attorneys for the government and the defendant may agree that, after the defendant pleads guilty, the government attorney will:

recommend, or agree not to oppose the defendant's request for a particular sentence or sentencing range, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor is or is not applicable to the case. Any such recommendation or request is not binding on the court.

. . . .

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein that are relevant to the guideline computation or to sentencing in general. Nor is the Court or Probation precluded from considering such facts.

. . . .

The parties understand that the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position of the parties. The Court is free . . . to reach its own findings of fact and sentencing factors considering the parties' stipulations, the presentence investigation, and any other relevant information.

. . . New facts that arise or are discovered may cause a party to change its position with regard to guideline computation or sentencing.

Plea Agreement at 3, 4, 7, Appellant's App. Tab D (citations omitted). The Plea Agreement further provided, with respect to Mr. Saenz's criminal history, as follows:

The parties understand that the defendant's criminal history computation contained herein is tentative, that Probation will further investigate his criminal history, and that the final criminal history category will be determined by the Court.

Id. at 7. The Agreement then listed five criminal convictions or offenses, including the present one, and concluded "at this time it appears that defendant has 8 criminal history points and, therefore, a tentative criminal history category

IV." Id. at 8. The Agreement also stated, "[t]he career offender/career livelihood

adjustments do not apply." Id.

The Agreement further provided:

> The guideline range resulting from the estimated offense level set forth . . . above, and the tentative criminal history category . . . above, is 70-87 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level set forth . . . above could conceivably result in a range from 46-57 months (bottom of Category I), to 92-115 months (top of Category VI). However, based upon the net weight of the controlled substance involved, the statutory minimum mandatory is 60 months, and the statutory maximum sentence is 40 years.

Id. at 8-9. The Agreement contained another paragraph explicitly setting forth the

maximum statutory penalty of 40 years. Id. at 3.

At the change-of-plea hearing, the district judge advised Mr. Saenz that the

mandatory minimum sentence was five years and that there was "a possibility of

up to 40 years." Tr. of Change of Plea Proceedings at 9, Appellant's App. Tab L.

After reviewing various aspects of the Plea Agreement with Mr. Saenz, the

following colloquy occurred:

> THE COURT: But the sentencing is to be decided, the particular sentence applicable to you, under a set of guidelines. And this document that we're looking at deals with those guidelines.
>
> Now, admittedly, they're kind of complex, and it involves a scoring system, points on, points off. And a lot of what this document talks about is what your lawyer, Mr. Lozow, and Mr. Troyer, the government's lawyer, think would be the guideline computation for you. Do you understand that?

- 4 -

THE DEFENDANT: Yes, I do. I read it.

THE COURT: Okay. Now, included in that scoring system is prior offenses, other crimes that you've been found guilty of. Do you understand that?

THE DEFENDANT: Uh-huh. Yes.

THE COURT: And it's expected here that that might put you in what's called a Category 4, and that the guideline range there would be 70 to 87 months.

THE DEFENDANT: Uh-huh.

THE COURT: Okay. Now, you know, we're not here to decide what the sentence would be exactly, because if you go ahead with the plea of guilty, what will happen is the matter will be put over. It takes about ten weeks for the whole process. The probation officer gets assigned, does some checking of records, gathers information, including any information from you, and prepares what's called a presentence report, which you get to read in advance, and to which you can state any objection that you have through your lawyer, he'll go over it with you, and the government, too, and then we'd have a hearing, at which time I would decide the exact sentence that would be imposed on you. It's my responsibility to do that. Understand?

THE DEFENDANT: Yes, I do.

Id. at 9-10. After further colloquy, the judge stated, "[s]o, like I say, there's no way for you to know this morning the exact sentence that would be imposed, and you have to think about it in terms of maybe you're going to spend five years in prison." Id. at 12.

Mr. Saenz's attorney stated, "I don't see any defense in this case, either legal or factual. The district attorney has indicated they'd make a non-binding

- 5 -

recommendation for 60 months in this case." Id. at 19. The judge then concluded that "the plea of guilty to Count 1 has been entered knowing[ly], voluntarily and intelligently." Id. The court did not advise Mr. Saenz that he would not be entitled to withdraw his guilty plea even if the court did not accept the sentencing recommendation contained in the Plea Agreement. This latter advisement is required by Fed. R. Crim. P. 11(e)(2) for plea agreements entered under Fed. R. Crim. P. 11(e)(1)(B).

Prior to the scheduled sentencing date, Mr. Saenz was informed that, in the course of preparing its presentence report, the probation department had discovered that he had an additional felony drug conviction that qualified as a controlled substance offense under the career offender guideline. Based upon this discovery, the presentence report classified Mr. Saenz as a career offender and calculated the applicable guideline range as 188-235 months.

On January 4, 2000, Mr. Saenz filed a motion to clarify, seeking a status hearing, and a motion to continue sentencing. He essentially sought to have the Plea Agreement enforced so that he would receive a five-year sentence. The government responded that the presentence report's classification of Mr. Saenz as a career offender and its corresponding guideline range calculation of 188-235 months was correct and that Mr. Saenz "should be sentenced to 160 months ( i.e., the bottom of that range less 15% pursuant to the government's agreement to file

- 6 -

a motion under Section 5K1.1 of the Sentencing Guidelines [for substantial assistance]).” Government’s Resp. to Presentence Investigation Report at 4, Appellant’s App. Tab I. The government filed a motion for downward departure, as the Plea Agreement provided, based upon Mr. Saenz’s substantial assistance.

Mr. Saenz’s attorney, Donald Lozow, then filed a motion to withdraw as counsel, citing Mr. Saenz’s request that Mr. Lozow no longer represent him. At the first sentencing hearing, held on January 28, 2000, the court stated, “[y]ou know, the man ought to withdraw his plea if this is a shock that he—this isn’t a voluntary plea because he didn’t realize the extent of his exposure, and we’ll go to trial.” Tr. of Sentencing Proceedings at 8, Appellant’s App. Tab M. Mr. Saenz’s attorney responded to that “invitation,” as follows: “If we do that, Your Honor, and believe me, I’ve spent some sleepless nights over this, if the Court does that . . . he loses his three level credits [for acceptance of responsibility]. Id. Mr. Saenz did not at that time seek to withdraw his guilty plea. The judge continued the sentencing proceeding to permit the probation department to gather more information about the cases upon which it based Mr. Saenz’s criminal history.

The continued hearing occurred on May 5, 2000, at which time the court reviewed the probation department’s latest information on Mr. Saenz’s prior convictions and considered Mr. Saenz’s attorney’s request to withdraw from the

case. Mr. Saenz's attorney, Mr. Lozow, stated that Mr. Saenz wished to withdraw his guilty plea and proceed to trial with a different attorney, although no formal motion to withdraw the plea was made at that time. When Mr. Lozow referred to the court's observation at the January 28, 2000, hearing that Mr. Saenz ought to withdraw his plea "if this [the discovery that he qualified for career offender status] is a shock," the court characterized its prior statement as "thinking out loud." Tr. of Sentencing and Hr'g on Mot. to Withdraw at 4, Appellant's App. Tab N.

When asked its position on any proposed motion to withdraw the guilty plea, the government responded that it opposed such withdrawal, stating, "[t]he plea agreement sets forth in several places clearly that sentencing is up to the Court, it's in the sole discretion of the Court. None of the numbers in there are guarantees. And in two separate places, it sets forth the statutory maximum of 40 years." Id. at 8. The government also explained its view that Mr. Saenz presented no justification for withdrawing his guilty plea:

> [a]nd I think there had been no other grounds stated other than the surprise, as Your Honor called it, from that New Mexico conviction, and that should not have been a surprise to the defendant himself. He's the one in the best position to be fully aware of the sentence that he actually served time on.

Id. The court granted Mr. Lozow's motion to withdraw, and continued the sentencing proceeding to permit Mr. Saenz to obtain a new attorney.

After several more continuances, sentencing finally occurred on August 18, 2000, with Mr. Saenz represented by new counsel. At that hearing, Mr. Saenz sought to withdraw his guilty plea on the ground that the voluntariness of his guilty plea was conditioned upon the affirmative representation in the Plea Agreement that he was not subject to the career offender provisions of the guidelines. The court denied the motion to withdraw the guilty plea, stating:

> The finding that I made at the time of the entry of the sentencing—of the plea of guilty under the agreement that it was knowing and voluntary is still the finding. The plea agreement is absolutely clear that Mr. Saenz could be sentenced up to the statutory maximum, and that what was set out here as the expectation of counsel was subject to the modification that the Court, of course, would make the determination of the sentencing guidelines at the time of sentencing.

Tr. of Sentencing Proceedings at 9, Appellant's App. Tab P. The judge sentenced Mr. Saenz to 159 months imprisonment.

Mr. Saenz appeals, arguing he should have been permitted to withdraw his guilty plea because the government violated the Plea Agreement by agreeing with the presentence report's classification of him as a career offender and by recommending a sentencing guideline range of 188-235 months. He also argues that the district court failed to advise him, as required by Rule 11, that he could not withdraw his guilty plea even if the court failed to follow the government's recommendation in the Plea Agreement.

## DISCUSSION

### I. Denial of Motion to Withdraw Guilty Plea

We review for an abuse of discretion the district court's denial of Mr. Saenz's motion to withdraw his guilty plea. United States v. Siedlik, 231 F.3d 744, 748 (10th Cir. 2000). "Defendants do not have an absolute right to withdraw a guilty plea." Id. Fed. R. Crim. P. 32(e) provides that "[i]f a motion to withdraw a plea of guilty . . . is made before sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason." See Siedlik, 231 F.3d at 748. The defendant bears the burden of establishing a "fair and just reason" for withdrawal of the plea. Id.

Mr. Saenz argues he should have been allowed to withdraw his guilty plea because the government affirmatively represented to him that he would not be classified as a career offender for sentencing purposes. Thus, Mr. Saenz argues, when the government later agreed with the probation department's recommendation that he in fact be sentenced as a career offender, it violated the Plea Agreement. We disagree.

As the government points out, and the district court noted, the Plea Agreement was replete with references to the fact that the court had complete discretion to ultimately determine Mr. Saenz's sentence, notwithstanding any position taken by any party. It also expressly contemplated the consideration by

the court of "additional facts or factors not included herein that are relevant to the guideline computation." Plea Agreement at 4, Appellant's App. Tab D. Further, it stated that Mr. Saenz's criminal history calculation was tentative, that the probation department would "further investigate his criminal history," id. at 7, and that the Plea Agreement itself "is not conditioned on the defendant being in a particular criminal history category." Id. at 8. Finally, it reiterated several times that the statutory maximum penalty was forty years. Thus, the Agreement did not bind the government or the court to the conclusion that Mr. Saenz could never be classified as a career offender.

Moreover, the reason for the government's and the court's initial misapprehension as to whether Mr. Saenz qualified for career offender status was because a prior felony drug conviction was omitted from the recitation in the Plea Agreement of Mr. Saenz's criminal history. We must assume that only Mr. Saenz was aware of the omission. Thus, the erroneous conclusion that Mr. Saenz did not qualify for career offender status was the result of his implicit misrepresentation to the government and the court.

Additionally, as we have stated before:

this circuit looks to seven factors in deciding whether a defendant has met the burden of showing that the district court, in denying a motion to withdraw a plea, acted unjustly or unfairly: (1) whether the defendant has asserted his innocence; (2) whether the government will be prejudiced if the motion is granted; (3) whether the defendant has delayed in filing the motion; (4) the inconvenience to the court if

the motion is granted; (5) the quality of the defendant's assistance of counsel; (6) whether the plea was knowing and voluntary; and (7) whether the granting of the motion would cause a waste of judicial resources.

Siedlik , 231 F.3d at 749.  Consideration of these factors weighs against permitting the withdrawal of Mr. Saenz's guilty plea.

First, Mr. Saenz has never asserted his innocence.  Indeed, his counsel conceded he had no defense, "either legal or factual."  Tr. of Change of Plea Proceedings at 19, Appellant's App. Tab L.  Second, withdrawal "likely would prejudice the government by forcing it to undergo much of the same process it already has completed."  Siedlik , 231 F.3d at 749.  Third, Mr. Saenz delayed seeking to withdraw his plea and only, finally, moved to withdraw orally right before sentence was imposed, some seven months and several hearings after the career offender issue arose.  [2]  Cf. United States v. Rhodes  , 913 F.2d 839, 845 (10th Cir. 1990) (noting that defendant failed to satisfy third factor where he "orally moved to withdraw his plea when the sentencing hearing was already underway, with no explanation as to why a motion to withdraw the guilty plea had not been submitted earlier").  Fourth, the court would undoubtedly be inconvenienced by permitting a knowing and voluntary plea to be withdrawn right

_____

[2]As his attorney at one point acknowledged in court, there would be some measurable risks to Mr. Saenz involved in withdrawing his guilty plea.  He would lose the three-level reduction for acceptance of responsibility and his substantial assistance reduction could also be at risk.

before sentencing.  Fifth, although Mr. Saenz asked to have his first attorney released, there is no evidence that he was ineffective in any way.  Sixth, the plea was knowing and voluntary, in the sense that Mr. Saenz had read and understood its terms and was not coerced into making it, although the court, as discussed below, failed to give part of the advice required under Fed. R. Crim. P. 11.  Finally, allowing the plea to be withdrawn at this point would waste judicial resources.

In sum, while Mr. Saenz was surely disappointed when he realized his sentence would be 159 months rather than 60 months, such a sentence was permissible and possible under the terms of the Plea Agreement.  It is neither unfair nor unjust to prevent Mr. Saenz from taking advantage of a factual omission in the Plea Agreement of which he alone was aware.  We therefore find no abuse of discretion in the district court's denial of his motion to withdraw his guilty plea.

## II.  Fed. R. Crim. P. 11 Advice

Mr. Saenz also argues his acceptance of the Plea Agreement was involuntary because neither the Agreement nor the court gave him the full advisement required by Fed. R. Crim. P. 11.  The Plea Agreement expressly stated that it was a Rule 11(e)(1)(B) agreement.  The government concedes it was such

an agreement. We therefore assume that it was. [3] As such, the court was required by Rule 11(e)(2) to "advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea." As the government agrees, the court failed to give that advisement, nor did the Agreement itself contain any such advisement. In that situation, "the issue for this court to determine is whether such failure was harmless error." United States v. Vaughn, 7 F.3d 1533, 1535 (10th Cir. 1993). "Harmless error" is defined as follows: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Fed. R. Crim. P. 11(h). "The issue of whether a district court has substantially complied with rule 11, including an analysis under subsection 11(h), before accepting a guilty plea, is a question of law subject to review de novo." Vaughn, 7 F.3d at 1535.

In determining whether the failure to give the full advisement was harmless error, we have held that such error "warrants reversal only if it had a significant

---

[3]The government at oral argument characterized the Agreement as a "soft" Rule 11(e)(1)(B) agreement because it does not contain a specific sentence or even a specific sentencing range which the government agreed to recommend to the court. Rather, different parts of the Agreement refer to different sentencing ranges and options. And, although the Agreement states that the career offender guideline is inapplicable, the Agreement also clearly states that the criminal history calculation is tentative and subject to revision. The Agreement as a whole makes it clear that the court would ultimately determine Mr. Saenz's exact sentence and additional information would be gathered about Mr. Saenz's criminal history and could be used.

influence on appellant's decision to plead guilty." Id. "We will not hold a Rule 11 defect harmless where the plea is a product of a 'material misrepresentation' relied on by the defendant." United States v. Gigot, 147 F.3d 1193, 1197 (10th Cir. 1998). "Nor will we find harmless error where '[t]here is a reasonable possibility that [defendant] was confused in a way that compliance with Rule 11 could have remedied.'" Id. (quoting United States v. Theron, 849 F.2d 477, 481 (10th Cir. 1988)).

Because each case is so fact-specific, our prior cases finding a Rule 11 violation either harmless or not harmless are instructive. In Theron, the district court, as here, failed to advise the defendant under Rule 11(e)(2). We held the error was not harmless and accordingly vacated the defendant's conviction and sentence. In Vaughn, we reached the opposite conclusion, finding the Rule 11(e)(2) violation harmless. The factual differences between the two cases are significant: in Theron, the defendant was a South African, "not familiar with American criminal procedure, and his counsel was in the process of unsuccessfully attempting to withdraw from the case." Theron, 849 F.2d at 481. Moreover, the defendant was confused as to what the plea agreement stated "because of the language barrier and the difference in customs." Id. Furthermore, we found the timing of the defendant's motion to withdraw

significant: as soon as he realized he might not get the recommended sentence, he filed a motion to withdraw his plea.

In Vaughn, by contrast, we were "convinced that Vaughn understood the contents of the plea agreement. He knew that the court was not bound by anything contained in the agreement." Vaughn, 7 F.3d at 1536. In that case, the plea agreement "neither guaranteed nor even mentioned a specific length of sentence. . . . Vaughn had no guarantees even as to the applicable base offense level or criminal history category because neither could be reasonably calculated until after the presentence investigation." Id. (emphasis added). Furthermore, we noted that "Vaughn does not allege that he would not have entered a guilty plea if the court had given the proper warning, which is relevant and important to a harmless error analysis." Id.

While we agree with the government that this is a close case, we conclude, on balance, that the error was harmless. First, Mr. Saenz has never argued that he would not have entered a guilty plea had the court given him the full advisement. Indeed, the record contains various references to both Mr. Saenz's and his attorney's awareness of the fact that he would have faced a real risk of an even greater sentence than the one he ultimately received had he gone to trial and been found guilty. And the likelihood of his being found guilty was significant. Second, although the possibility of his withdrawing his guilty plea was

mentioned, he never actually moved to do so until right before sentencing, some seven months after the issue of Mr. Saenz's career offender status arose. Third, although the Plea Agreement mentioned 60 months, the Agreement as a whole made it abundantly clear that Mr. Saenz's criminal history was tentative and subject to revision, that the court would make the final decision on sentencing, and that the maximum statutory sentence possible was forty years. As we were with the defendant in <u>Vaughn</u>, we are convinced Mr. Saenz understood the contents of that Agreement. In sum, we conclude that the error in failing to specifically advise Mr. Saenz that he could withdraw his guilty plea if the court did not accept the recommendations in the Plea Agreement did not substantially affect his decision to plead guilty, and was, accordingly, a harmless error.

## CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Saenz's sentence and conviction.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge